LYDIA B. WARREN *vs.* WILLIAM DURFEE & another, administrators.

Bristol. Oct. 22, 1878. — March 3, 1879. ENDICOTT & LORD, JJ., absent.

In an action on a promissory note, signed by the defendant's intestate, and payable to the plaintiff "after death," it appeared that an engagement of marriage had existed between the plaintiff and the intestate; that the latter was subject to heart disease and when ill had frequently sent for the plaintiff to come and take care of him; that, on the night before the date of the note, the intestate had an unusually severe attack, and said that "if he got out of that he must have some writing done;" that the next day he made and signed the note, and handed it to the plaintiff in a sealed envelope, saying "there was something which would provide for her in case anything should happen to him, that if they were married, and he wanted it given up, he should expect her to give it up," to which she assented; and that, before and during their engagement, the plaintiff had taken care of his wardrobe, repaired his clothing and bought various articles for him, and taken care of him when he was ill. *Held,* that the note was intended by the intestate as a provision for the plaintiff by way of gift out of his estate, and no action could be maintained on it.

CONTRACT on the following instrument, declared on as a promissory note, signed by the defendants' intestate, James F.

Westgate: "$15,000. Fall River, December 11, 1875. On demand after date I promise to pay to the order of Lydia B. Warren fifteen thousand dollars, value received, payable after death." Writ dated May 16, 1877.

Trial in this court, before *Colt,* J., who reported the case for the consideration of the full court, in substance as follows:

The plaintiff and Westgate were acquainted for many years before his death; and, in June 1874, they were engaged to be married. From that time until the death of Westgate, which occurred on February 8, 1876, they were tenderly attached to each other and were often together; and he occasionally went to her home in Rhode Island to visit her. In September 1875, he was taken ill at Fall River, where he lived, and sent for the plaintiff to come and take care of him, which she did. He got better and she went home just before Thanksgiving. Early in December he had another attack. He again sent for her, and she came and remained until after his death. He seemed to recover also from this attack. On the night before December 11, 1875, he had an unusually severe attack of heart disease. He said if he got out of that he must have some writing done. The next day he went to his place of business, where he made and signed, in the presence of a witness, the instrument declared on. That evening, at his house, he took out a sealed envelope and handed it to the plaintiff, saying to her, there was something which would provide for her in case anything should happen to him; that if they were married, and he wanted it given up, he should expect her to give it up. To this the plaintiff assented. He then said he did not want her to leave it around where a certain person could see it. She then took the sealed envelope and carried it to her room, where she kept it in her possession until after his death, when she took it with her when she returned to her home, and has had possession of it ever since. After Westgate's death, she opened the envelope, and found inside of it the instrument declared on. After the engagement in June 1874, Westgate was anxious to have the marriage take place in April 1875. She said she had suits pending about her husband's estate with his brothers, and wanted to wait until those were over, and the marriage was therefore deferred. Finally, in October 1875, Westgate said he could do better by her than the Warrens, and

the marriage was fixed for his next birthday, February 16, 1876, and, a few days before his death, invitations were given to a few friends to be present. Before and during the engagement, the plaintiff took care of his wardrobe, repaired his clothing, bought his handkerchiefs and stockings, and attended to a good many other things for him, and at various times when he was ill took care of him. The defendants were appointed adminis trators of his estate on March 3, 1876, and on April 1, 1876, demand for the payment of this claim was made upon them, which was refused.

Upon these facts, the plaintiff contended that she could recover the full amount of the instrument declared on, with interest from the date of the demand. The defendants contended that the plaintiff could not recover; and that, if she could recover anything, she was only entitled to recover for the services actually rendered to Westgate.

If the plaintiff could recover the full amount claimed, judgment was to be entered for her for such amount; if not, and the plaintiff was entitled to recover for the services actually rendered, the case was to stand for trial upon that issue; otherwise, judgment for the defendants.

*J. M. Morton, Jr.*, for the plaintiff.

*G. Marston,* (*J. C. Blaisdell* with him,) for the defendants.

SOULE, J. The plaintiff seeks to recover on the instrument declared on, as on a promissory note given in payment for services rendered and in consideration of the promise of a speedy marriage; and, failing that, to recover the value of the services rendered, which she contends entered into the consideration of the instrument. The defendants contend that the instrument is not a promissory note, because it was not delivered to take effect during the lifetime of the signer; and that it is invalid for want of consideration, and because it was intended as a testamentary disposition of property by the signer, and not as a contract in payment of a debt or obligation of any kind.

Unless the evidence is sufficient to warrant a jury in finding a valid consideration for the instrument, the action can-not be maintained. It is not enough to show that there was an obligation on the part of the signer to the plaintiff, which would have been a good consideration for a note given in sat-

isfaction thereof; there must be evidence that the instrument was given and accepted in payment or satisfaction of such obligation.

We are of opinion, on the evidence in the case, that the circumstances under which the instrument was given, and the statement of the intestate at the time, point to an entirely different purpose from that of payment, either for services or for the promise of a speedy marriage. The intestate had been seriously ill with disease of the heart. While thus ill, he said that if he recovered he must have some writing done; and on the next day made the instrument and gave it to the plaintiff in a sealed envelope, requesting her not to open it till after his death, and saying that there was something which would provide for her in case anything should happen to him; that if they were married, and he wanted it given up, he should expect her to give it up, to which she assented. These circumstances, wholly inconsistent with the theory that the instrument was intended as a settlement of account, are conclusive evidence that the intestate was attempting to make a provision for the plaintiff out of his estate, in case he should die without marrying her. If anything were needed to make this inference from the facts more absolutely inevitable, it is found in the instrument itself, which is, in terms, payable after the maker's death. Being without consideration, therefore, the note is void. It is not valid either as a gift *causa mortis*, or as a testamentary disposition of property. *Parish* v. *Stone*, 14 Pick. 198. *Hulse* v. *Hulse*, 17 C. B. 711.

The facts in the case at bar are essentially different from those in *Dean* v. *Carruth*, 108 Mass. 242, where the refusal of the judge to rule that the action could not be maintained was sustained by this court. In that case, the note was contained in a sealed envelope, on which was written a request to the payee not to open it till after the maker's death, and on the same paper with the note was written a request to the payee to accept the note from her true friend, the maker. There was evidence of services rendered by the payee, similar to those proved in the case at bar, but there was no marriage engagement between the parties; and there was no affirmative statement by the maker of the note that the envelope contained something which would provide for the payee in case of the maker's death; nor any

evidence of an agreement by the payee to give up the note at request of the maker, on any contingency. The evidence left the question of purpose in giving the note, and of consideration, open as a matter of inference from the evidence, the court holding that the request to accept the note was not, as matter of law, conclusive that it was a gift, as it was consistent with a desire to have the note accepted instead of money, and that the request that the envelope should not be opened till the maker's decease was not decisive on the question of consideration, and that the two memoranda, construed together, did not, as a matter of legal interpretation, signify that the note was a mere gift.

In the case at bar, the declaration of the intestate the day before the note was made, while ill, and doubtful of recovering his health, added to his statement when the envelope was delivered, that there was something which would provide for her if anything should happen to him, — which is equivalent to "if he should die," — give a decisive character to the transaction, which precludes the idea of the note being intended otherwise than as a provision for the plaintiff by way of gift, out of the estate of the maker. In *Worth* v. *Case*, 42 N. Y. 362, relied on by the plaintiff, the note purported on its face to be given "in consideration of services rendered," and there was evidence that the plaintiff had rendered services which had not been otherwise paid for; the evidence of consideration was therefore distinct.

*Judgment for the defendants*