PAUL K. L. E. KRELL & another *vs.* ROBERT CODMAN.

Suffolk.    November 12, 13, 1890. — October 24, 1891.

Present: ALLEN, HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Voluntary Covenant — Public Policy — Enforcement.*

A voluntary covenant, in an indenture under seal executed in England, by which
a testatrix, who afterwards dies domiciled in this Commonwealth, promises that
her executors shall within six months after her death pay to the other parties
thereto, upon certain trusts, a specified sum, with interest from the day of her
death, is not contrary to the policy of the laws of this State, and is enforceable
here after her decease.

CONTRACT, against the executor of the will of Martha G.
Wheelwright, upon a covenant in an indenture under seal, dated
February 13, 1885.   The case was heard in January, 1890, by
*Field*, J., and reported by him for the consideration of the full
court, and was as follows.

The indenture was executed by " Martha Gerrish Wheel-
wright, of Roslyn House, Oatlands Park, in the county of Surrey,
widow, of the one part, and Paul Karl Ludwig Emil Krell of
the same place, Esquire, and Charles Watkins of No. 19 Oak-
ley Square in the parish of St. Pancras in the county of Mid-
dlesex, Esquire, of the other part," and provided as follows :
" Whereas the said Martha Gerrish is desirous of making some
provision for Constance Hope Eagle, the adopted child of the said
Paul Karl Ludwig Emil Krell, and of his wife, Maria Augusta
Krell, the daughter of the said Martha Gerrish Wheelwright, the
said Constance Hope Eagle being now seven years of age and
residing at Roslyn House, Oatlands Park, aforesaid, — Now this
indenture witnesseth that in consideration of the love and affec-
tion of the said Martha Gerrish Wheelwright for the said Con-
stance Hope Eagle, and for divers other good causes and con-
siderations, the said Martha Gerrish Wheelwright doth hereby,
covenant with the said Paul Karl Ludwig Emil Krell and Charles
Watkins, or the survivor of them or the executors or adminis-
trators of such survivor, or other the trustees or trustee for
the time being of these presents (hereinafter called the trus-
tees or trustee), that, in case the said Constance Hope Eagle

shall survive her the said Martha Gerrish Wheelwright, the executors or administrators of her the said Martha Gerrish Wheelwright shall, within six calendar months after her death, pay to the trustees or trustee the sum of £2500, with interest thereon at the rate of four per cent per annum from the day of her death: provided always that the said Martha Gerrish Wheelwright shall be at liberty to pay the said sum of £2500, or any part thereof, to the trustees or trustee at any time during her lifetime." The indenture then provided that the trustees should invest the sum above named only in English or Colonial securities, and should hold the same for the benefit of Constance Hope Eagle; but it was further agreed that, " if the said Constance Hope Eagle shall not survive the said Martha Gerrish Wheelwright, or surviving her shall not live to attain the age of twenty-one years, nor to marry under that age, then subject to the trusts and powers hereinbefore declared and contained, or by law vested in the trustees or trustee, shall stand possessed of the trust premises and the income thereof, in trust for the said Martha Gerrish Wheelwright, her executors, administrators, and assigns absolutely."

This indenture was drawn and settled on behalf of all parties by a firm of English solicitors, and executed at Walton-on-Thames, Surrey, England. By the law of England a covenant such as that contained in this instrument constitutes a debt of the covenantor legally chargeable upon his or her estate, ranking after debts for value, but before legacies. At the date of the indenture Mrs. Wheelwright was living with her daughter, who was the wife of the first named plaintiff, and the child Constance Hope Eagle was living with and supported by Mr. and Mrs. Krell, but was never legally adopted by them. She was still a minor, and lived with them in England. Mrs. Wheelwright died on August 30, 1888, and at the time of her death was domiciled in Newburyport in this Commonwealth, and her will, which was executed in this Commonwealth on October 10, 1881, was duly proved here.

The judge found that, at the time Mrs. Wheelwright executed the indenture, her place of residence and home were in England, but her political domicil was in Massachusetts. If the plaintiffs were entitled to maintain the action, judgment was to be entered

for them for the sum named in the indenture, with interest; otherwise, judgment was to be entered for the defendant.

The case was argued at the bar in November, 1890, and afterwards, in October, 1891, was submitted on the briefs to all the judges except *Field*, C. J. and *Morton*, J.

*C. K. Cobb*, (*F. E. Brooks* with him,) for the plaintiffs.

*R. Codman, Jr.*, for the defendant.

HOLMES, J.   This is an action on a voluntary covenant in an indenture under seal, executed by the defendant's testatrix in England, that her executors, within six months after her death, should pay to the plaintiffs, upon certain trusts, the sum of £2,500, with interest at four per cent from the day of her death.

It is agreed that by the law of England such a covenant constitutes a debt of the covenantor legally chargeable upon his or her estate, ranking after debts for value, but before legacies.   But it is contended by the defendant that a similar instrument executed here would be void.   The testatrix died domiciled in Massachusetts, and the only question is whether the covenant can be enforced here.   If a similar covenant made here would be enforced in our courts, the plaintiffs are entitled to recover, and in the view which we take on that question it is needless to examine with nicety how far the case is to be governed by the English law as to domestic covenants, and how far by that of Massachusetts.

In our opinion, such a covenant as the present is not contrary to the policy of our laws, and could be enforced here if made in this State.   If it were a contract upon valuable consideration, there is no doubt it would be binding.   *Parker* v. *Coburn*, 10 Allen, 82.   We presume that, in the absence of fraud, oppression, or unconscionableness, the courts would not inquire into the amount of such consideration.   *Parish* v. *Stone*, 14 Pick. 198, 207.   This being so, consideration is as much a form as a seal. It would be anomalous to say that a covenant in all other respects unquestionably valid and binding ( *Comstock* v. *Son, ante*, 389, and *Mather* v. *Corliss*, 103 Mass. 568, 571) was void as contravening the policy of our statute of wills, but that a parol contract to do the same thing in consideration of a bushel of wheat was good.   So, again, until lately an oral contract founded on

a sufficient consideration to make a certain provision by will for a particular person was valid. *Wellington* v. *Apthorp*, 145 Mass. 69. Now, by statute, no agreement of that sort shall be binding unless such agreement is in writing, signed by the party whose executor is sought to be charged, or by an authorized agent. St. 1888, c. 372. Again, it would be going a good way to say by construction that a covenant did not satisfy this statute.

The truth is, that the policy of the law requiring three witnesses to a will has little application to a contract. A will is an ambulatory instrument, the contents of which are not necessarily communicated to any one before the testator's death. It is this fact which makes witnesses peculiarly necessary to establish that the document offered for probate was executed by the testator as a final disposition of his property. But a contract which is put into the hands of the adverse party, and from which the contractor cannot withdraw, stands differently. See *Perry* v. *Cross*, 132 Mass. 454, 456, 457. The moment it is admitted that some contracts which are to be performed after the testator's death are valid without three witnesses, a distinction based on the presence or absence of a valuable consideration becomes impossible with reference to the objection which we are considering. A formal instrument like the present, drawn up by lawyers and executed in the most solemn form known to the law, is less likely to be a vehicle for fraud than a parol contract based on a technical detriment to the promisee. Of course, we are not now speaking of the rank of such contracts *inter sese*. *Stone* v. *Gerrish*, 1 Allen, 175, cited by the defendant, contains some ambiguous expressions, but was decided on the ground that the instrument did not purport to be and was not a contract. *Cover* v. *Stem*, 67 Md. 449, was to like effect. The present instrument indisputably is a contract. It was drawn in English form by English lawyers, and must be construed by English law. So construed, it created a debt on a contingency from the covenantor herself, which if she had gone into bankruptcy would have been provable against her. *Ex parte Tindal*, 8 Bing. 402; *S. C.* 1 D. & Ch. 291, and Mont. 375, 462. Robson, Bankruptcy, (5th ed.) 274. The cases of *Parish* v. *Stone*, 14 Pick. 198, and *Warren* v. *Durfee*, 126 Mass. 338, were actions on promissory notes,

and were decided on the ground of a total or partial want of consideration.

There is no question here of any attempt to evade or defeat rights of third persons, which would have been paramount had the covenantor left the sum in question as a legacy by will. There is no ground for suggesting an intent to evade the provisions of our law regulating the execution of last wills, — if such intent could be material when an otherwise binding contract was made. See *Stone* v. *Hackett,* 12 Gray, 227, 232, 233. There was simply an intent to make a more binding and irrevocable provision than a legacy could be, and we see no reason why it should not succeed.

*Judgment for the plaintiffs.*