THOMAS J. KELLY & another, administrators, *vs.* JAMES M. MORRISON & another.

Suffolk.    March 26, 1900. — September 5, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Partnership — Construction of Agreement — Equity — Discovery.*

A partnership, consisting of A., B., and C., which was a continuation of a previous partnership between A. and B., was formed for two years, each partner contributing a certain sum to the capital, and the profits and losses to be shared in certain proportions.    The articles of partnership provided that the several contributions to the capital should be paid by the transfer to the new firm of the property belonging to the old firm ; and that if either of the partners should die during the continuance of the partnership, the business might be carried on by the survivors, and the interest of the deceased partner in the property of the firm for all purposes should be taken to be "the balance standing to his credit as of the next preceding annual account taking of the stock, assets, and debts owing to and by the said firm." An annual account of the stock, assets, and debts of the old firm was taken on the day the new partnership began, showing a balance to the credit of each partner, and a portion of these assets was transferred to the new firm.    A. died during the first year of the new partnership, and the business of the firm was continued by the other partners as the contributions of A. and B. The contribution to the new partnership made by C. was the amount then due to him as an employee of the old firm.    *Held*, on a bill in equity to obtain A.'s share of the profits upon the basis of the proportional percentage fixed by the articles of partnership, that the account taken on the day the new firm was formed was adopted by that firm as its first "annual account taking," and was the "next preceding annual account taking" of that firm, within the meaning of the partnership articles, and determined the amount of A.'s interest in the partnership property.

A bill in equity by the administrator of the estate of a deceased partner against the other partners, to obtain the intestate's share of the profits of the partnership, will not lie also to obtain the exhibition of the books and papers of the firm, upon an allegation that the firm did business here and in another State, and that an official named threatened to assess and collect a tax from the plaintiff on the interest of the deceased partner in the property of the firm in that State

on the day of his death, and in order to ascertain the amount of such tax threatened to appraise the property there.

A bill for discovery of evidence to be used in defence of an action does not ordinarily lie against a person not a party to that action, and whose only relation to it is that of a witness.

BILL IN EQUITY, filed October 25, 1897, in the Superior Court, by the administrators *de bonis non* with the will annexed of the estate of Thomas Kelly, against James M. Morrison and Mary F. Maguire, executrix of the will of Thomas F. Maguire, to obtain Kelly's share of the profits of the partnership of Thomas Kelly and Company. Hearing before *Fessenden*, J., who reserved the case for the consideration of this court. The facts appear in the opinion.

*H. V. Cunningham*, for the plaintiffs.

*B. L. M. Tower*, for the defendants.

LORING, J. This is a bill by which the administrators *de bonis non* with the will annexed of the estate of Thomas Kelly seek to have the profits of the partnership, of which he was a member when he died, ascertained for the period between the formation of the partnership and the date of his death, and to have 51.66⅔ per cent thereof paid to them. At the time of his death Thomas Kelly was a member of the firm of Thomas Kelly and Company, consisting of himself, Thomas F. Maguire, and James M. Morrison. The firm was formed on December 1, 1892, and Kelly died on the thirty-first day of the following August. Kelly contributed $275,000, Maguire $75,000, and Morrison $7,831.57, to the capital of the partnership; they were to share profits and losses in the proportions of 51.66⅔ per cent, 25.83⅓ per cent, and 22.50 per cent, respectively. On the death of Kelly the business of the partnership, in place of being wound up, was continued by Maguire and Morrison under the thirteenth article of the partnership agreement,* which provided

---

* This article was as follows: "If either of the said partners shall die during the continuance of the said partnership his interest in the assets and property of the said firm shall be conclusively, finally and for all purposes taken to be the balance standing to his credit as of the next preceding annual account taking of the stock, assets and debts owing to and by the said firm, with interest thereon at the rate aforesaid from that time, less and deducting therefrom not only such money and property as he shall after such annual account have drawn from the firm, but also interest thereon at the

for such a continuance of the business, and also that: " If either of the said partners shall die during the continuance of the said partnership, his interest in the assets and property of the said firm shall be conclusively, finally, and for all purposes taken to be the balance standing to his credit as of the next preceding annual account taking of the stock, assets, and debts owing to and by the said firm," with interest at six per cent per annum. The partnership was to continue for two years from December 1, 1892, and, by the terms of article second of the partnership agreement, the several contributions to the firm capital mentioned above "shall be paid by the transfer to the firm hereby formed of the merchandise and other property belonging to the last firm of Thomas Kelly and Company to the extent of the amounts as above stated."

It appears that " an annual account of the stock, assets, and debts of Thomas Kelly and Company," referred to in the above article in the partnership agreement in question, " was taken December 1, 1892, and showed a balance to the credit of said Kelly of $293,264.18, of which sum $275,000 was placed to his credit, and the balance of $18,264.18 was withdrawn by him in various sums between December 1, 1892, and February 11, 1893; said account taking showed a balance to the credit of said Maguire of $78,667.85, of which sum $75,000 was placed to his credit, and the balance, $3,667.85, was withdrawn by him in various sums between December 9, 1892, and April 15, 1893. On December 1, 1892, there stood to the credit of James M. Morrison, as an employee of said firm, $7,831.57, which was placed to his credit."

Maguire, one of the surviving partners, was the sole executor

rate aforesaid from the respective times of such withdrawals, and all profits, expenses and depreciation and losses of the said firm occurring after such annual account, whether such losses shall arise from the failure of the firm's debtors to pay accounts or notes taken as good in such annual account, or from other causes, shall in that case belong to or be borne and paid, as the case may be, by the surviving partners alone, who may use the name, credit and entire capital of the firm for a term not exceeding fifteen months reckoning from the first day of the December previous to the death of the other partner, and who shall share the whole of the profits and losses made and incurred after such death in the proportion in which, before such death, they shared the balance of the profits and losses, after deducting such deceased partner's share."

of Kelly's will; and in the inventory of Kelly's estate he set down Kelly's interest in the partnership at $281,577.16. "This was the amount standing to the credit of said Thomas Kelly on the books of said firm of Thomas Kelly and Company on December 1, 1892, being $275,000 capital contributed by him on that date, with interest thereon to August 31, 1893, less the sums withdrawn by him between said December 1, 1892, and August 31, 1893." Thomas Kelly and Company, the successors of the firm in question, paid to Maguire, as executor of Kelly's will during Maguire's lifetime, $202,703.86. Maguire died on April 20, 1895, and Kelly and Company paid the balance with interest, amounting to $98,291.41, to the plaintiffs.

The plaintiffs' contention is that since Kelly died during the first year of the partnership there never had been a "next preceding annual account taking of the stock, assets, and debts owing to and by the said firm"; that a death during the first year was a contingency not provided for in the partnership articles; that there being no prescribed mode of arriving at the profits of the partner who dies during the first year, the general provision that he is to receive 55.66⅔ per cent should control; and this bill is brought to recover that share of the profits from the beginning of the partnership to the date of his death.

We are of opinion that this contention is not well founded. It appears that Thomas Kelly began the business of selling blankets by the wholesale, which was to be carried on by the firm in question, in 1862, thirty years before the date of the partnership in question; and "on January 1, 1866, the partnership of Thomas Kelly and Company was formed, under which style successive firms carried on said blanket business. In the year 1880, Thomas F. Maguire became a partner, the latter and said Kelly being the only partners until December 1, 1892, when said Morrison, who had been in the employ of all said firms, became a partner." It further appears that the partnership agreement of "the last firm of Thomas Kelly and Company" contained articles making substantially the same provision, (1) for an annual account of stock, and (2) for continuing the business in case of the death of either partner, and ascertaining the interest of the deceased partner, as is made in the partnership agreement in question.

The partnership of Thomas Kelly and Company by its terms was to last but two years; if the plaintiffs' contention° is correct, the interest of a partner dying during the first year is to be ascertained in one way, and that of one dying in the second year of the partnership, in another way ; but this is not contemplated by the provision that in case " either of the said partners shall die during the continuance of the said partnership," his interest for the year in question shall in all cases be the amount standing to his credit " as of the next preceding annual account taking of the stock."

It is strictly true, as the plaintiffs contend in their argument, that the old partnership of Thomas Kelly and Company was in contemplation of law dissolved, and that the partnership of Thomas Kelly and Company in question in legal contemplation was a new partnership. But it is equally true that the partnership in question was in fact made to carry on the business of the previous firm of the same name, its capital was paid in by a transfer of the assets of the old firm, and the interest of each partner in the new partnership had been ascertained by the annual account of stock taken by the old firm, on the same day and for the same purpose as that provided for in the articles of partnership in question, and that the provisions of the thirteenth article (the article in question) apply equally to each of the two years during which the partnership was to run. This was in fact an account of stock taken of the assets of the old firm, and of the interest in those assets of the persons who became the partners in the new firm, (treating Morrison's claim as a creditor of that firm as an interest therein to the amount of the debt due him,) and those assets were transferred to the new firm, and the interests of the partners in the new firm were ascertained by that account of stock. We think that this account of stock was adopted by the new firm as its first " annual account taking of the stock, assets, and debts owing to and by the said firm," and was the " next preceding annual account taking of the stock " of the new firm within the meaning of the thirteenth article.

The bill also contains a prayer " that the defendants be ordered and directed to exhibit said books, vouchers, papers, securities, and documents belonging to said firm " ; this is based

on an allegation that the firm did business in New York as well as in Boston, and that the comptroller of the State of New York " threatens to assess and collect a tax from your petitioners on the interest of said Thomas Kelly, deceased, in the property and assets of said firm in said State of New York on said thirty-first day of August, 1893, under the laws of said State of New York. And in order to ascertain the amount of said tax threatens to appraise said property and assets then and there in New York as aforesaid."

So far as this prayer is concerned, the bill is a bill for discovery. Apart from the objection that the bill is multifarious, it is not good as a bill of discovery. There is no allegation that there is any law of the State of New York making the plaintiffs who are administrators appointed in this State liable for the interest of Thomas Kelly in the firm's assets in New York; there is no allegation that any suit has been brought by the comptroller; and, finally, a bill for discovery of evidence to be used in defence of an action does not ordinarily lie against a person not a party to that action and whose only relation to it is that of a witness.

The entry must be,        *Bill dismissed.*