CORNELIUS E. HALE, executor, *vs.* HARRY S. WILMARTH &
another.

Norfolk.    December 9, 1930. — January 7, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Contract,* Validity, Of partnership. *Gift. Wills, Statute of. Evidence,*
Competency.

A widow, owner of real estate upon which a factory was operated by a
partnership composed of herself, owning a one-half interest, and two
nephews, after a conference with the nephews as to the requirements of
the business and without fraud on their part, conveyed the real es-
tate to them at a price fixed by an appraiser selected by her and
with them executed a new partnership agreement under seal which
provided that her interest should be one quarter instead of one half,
that each partner had a right to terminate the partnership on thirty
days' notice, that each nephew should receive a salary of $1,500, that
she should be exempt from any attention to or care of the business,
that the partnership should occupy the real estate free of rent and that
upon her death her interest in the partnership "shall become the
property" of the nephews without the payment of further compen-
sation by them.   A suit in equity, brought after the widow's death
by the executor of her will, to have the new agreement and the deed
of real estate declared void, was dismissed.   The plaintiff appealed.
*Held,* that

(1) There was no gift by the widow to the nephews of her remain-
ing one quarter interest in the partnership: the provision that on her
death that interest "shall become the property" of the nephews,
was part of a contract based upon ample consideration;

(2) That provision was not in violation of the statute of wills, and
was valid;

(3) The suit properly was dismissed.

It was not improper, at the hearing of the suit above described, to ex-
clude portions of a letter written by the widow to a third nephew,
which asked for advice, made a statement of a supposition coupled
with an assertion of lack of knowledge, and requested help, statements
as to which she could not have testified had she been a witness.

BILL IN EQUITY, filed in the Superior Court on Novem-
ber 26, 1924, by the executor of the will of Emma W.
Blackinton, late of North Attleborough, against Harry S.
and Edwin R. Wilmarth, in which the plaintiff alleged the

existence in 1908 of a partnership between the plaintiff's testate and the defendants; that in 1917, by fraud and without consideration the defendants procured the execution by her of the new partnership agreement described in the opinion and a deed to them of her real estate upon which the partnership conducted its factory; and sought the establishment of the partnership of 1908, an accounting, and that the agreement of 1917 and the deed of the real estate be declared null and void.

The suit was referred to a master. Findings by the master are stated in the opinion. By order of *Broadhurst,* J., there were entered an interlocutory decree overruling exceptions of the plaintiff to the master's report and confirming the report, and a final decree dismissing the bill.

The plaintiff appealed from both decrees.

*W. B. Grant, (H. Richter* with him,) for the plaintiff.

*J. N. Clark,* for the defendants.

CARROLL, J. In this suit in equity the plaintiff, the executor of the will of Mrs. Blackinton, a deceased member of a partnership, seeks to have declared void a provision in the partnership agreement between the testatrix and the defendants that upon her death her interest in the partnership should become the property of the defendants. The report of the master was confirmed by an interlocutory decree from which the plaintiff appealed. A final decree was entered, dismissing the bill. The plaintiff appealed.

The testatrix was the defendants' aunt. Her husband, at the time of his death in 1888, carried on the business of manufacturing jewelry in North Attleborough. After his death she became a partner with the father of the defendants, in the same business. The factory in which the business was done was then owned by the testatrix. In 1908 a new partnership was formed between the testatrix and the defendants, which continued until 1914. Under the 1908 agreement she had a one-half interest. In 1911 or 1912 the defendants concluded that the factory could be operated much more economically if electricity were substituted for steam. Mrs. Blackinton objected to the

cost. It was agreed that Harry S. Wilmarth, one of the defendants, should at his own expense make the change and a contract was drawn up by which the firm should pay Harry S. Wilmarth $35 a month as rent for the new equipment, with an option in the firm to purchase at cost. In 1917 business had increased and the defendants decided that the original plant was not large enough. This matter was discussed by the partners. Mrs. Blackinton was unwilling to put more money into the buildings or the business. She offered to give the defendants the entire interest in the business if they would buy the land and buildings from her at a fair price. It was finally agreed that the defendants would purchase the land and buildings at a price to be fixed by an appraiser selected by her, and, as a part of the same transaction, she would transfer one half of her interest in the partnership, retaining as long as she lived the remaining part of her interest in the business, namely, a one-quarter interest, and upon her death all of her interest in the firm was to cease without further compensation being made therefor. The land was conveyed to the defendants and the price paid by them. The partnership agreement was duly executed in June, 1917. It provided that on the death of Mrs. Blackinton her interest in the firm should become the property of the defendants, that the profits of the business should be divided, one quarter payable to Mrs. Blackinton. She died in December, 1922. In her will she stated, " I have purposely omitted Harry S. Wilmarth and Edwin Robinson Wilmarth [the defendants], as I have amply provided for them during my life-time, by giving them an interest in the V. H. Blackinton & Co."

The main contention of the plaintiff is that the words in the partnership agreement, to the effect that on the death of Mrs. Blackinton her interest in the partnership should become the property of the defendants, are testamentary in nature and therefore inoperative and void under the statute of wills. G. L. c. 191, § 1. In *Murphy* v. *Murphy,* 217 Mass. 233, it was held that partnership agreements providing for the disposition of the interest

of partners in partnership property after the death of one
or more of the parties are frequent; that when fairly
made without intent to evade the statute of wills they
are valid and open to no objection. There are sound rea-
sons, as stated in the opinion at page 236, "why a fair
agreement entered into by partners, as to the disposition
of partnership property in the event of the death of one
or more of the partners, should be sustained. The terms
of such an agreement made by those most familiar with
the real character and value of the property, are quite as
likely to be just as an arrangement made after the de-
cease." The fact that in the *Murphy* case the partner-
ship was to continue for five years, and in the case before
us no specific time, during the life of the parties, was fixed
for its dissolution, is no ground for distinguishing the cases.
Nor is it important that in the *Murphy* case a valuation
was placed on the interest of the deceased partner. Mrs.
Blackinton could provide, if she so desired, that her in-
terest should be sold to the surviving partners at a fixed
price, or contract for the disposition of her interest on
her death, as stated in the partnership agreement. *Krell
v. Codman,* 154 Mass. 454.

It is not disputed that an attempted gift of property,
to take effect on the death of the donor without delivery
of the property, control and dominion being retained by
the donor during his lifetime, is invalid. *Tewksbury* v.
*Tewksbury,* 222 Mass. 595. *Battles* v. *Millbury Savings
Bank,* 250 Mass. 180.

The statute of wills, however, does not prevent an owner
of property from stipulating by contract for the disposi-
tion of his property at the time of his death. *Stone* v.
*Hackett,* 12 Gray, 227. *Perry* v. *Cross,* 132 Mass. 454, 457.
*Krell* v. *Codman, supra. Chippendale* v. *North Adams
Savings Bank,* 222 Mass. 499, 501, 503. *Marble* v. *Treas-
urer & Receiver General,* 245 Mass. 504, 508, 509. *Brod-
rick* v. *O'Connor,* 271 Mass. 240. *Holyoke National Bank
v. Bailey,* 273 Mass. 551.

Mrs. Blackinton did not make a gift; she made a con-
tract with the defendants, supported by a consideration.

By this agreement the defendants were to purchase at the price fixed by her appraiser the land and buildings owned by her. As a part of this transaction, she was to transfer half her interest in the partnership and retain as long as she lived the remaining half, each partner reserving the right to terminate the partnership on thirty days' notice, and upon her death her interest in the business was to cease. The land was conveyed, the agreement was reduced to writing, and the stipulation inserted that upon the decease of Emma W. Blackinton her interest in the firm " shall become the property " of the defendants. This written agreement was under seal. By its terms the defendants were to bear three fourths of any loss. The salary of each defendant was fixed at $1,500. Mrs. Blackinton was exempt from any attention to or care of the business. The firm was to occupy free of rent the factory and outbuildings, and had the right to purchase the electrical equipment installed by Harry S. Wilmarth. There was ample consideration, therefore, for the agreement, it was free from fraud, and was apparently fully understood by Mrs. Blackinton. *Kelly* v. *Morrison,* 176 Mass. 531, *Taber* v. *Breck,* 192 Mass. 355, and the other cases relied on by the plaintiff, are not in conflict.

The plaintiff introduced a letter of the testatrix written in the year 1922 to a third nephew. This letter, it was found by the master, was written in good faith and was admitted in evidence with certain parts excluded. The plaintiff objected to these exclusions. The letter contained a statement asking advice as to whether it would be better to sell " my one-fourth interest." This portion of the letter was excluded. The letter concludes with these words which were also excluded: " (a trick in trade). I expect Harry made out the partnership papers but don't know. I should like your help in the matter if you cared to give it." The first part of the letter excluded was not a statement of fact: it asked for advice; the second portion was a mere supposition coupled with the statement of lack of knowledge; and the final part, a request for help. There was no harmful error in excluding these portions

of the letter. The excluded statements could not have been testified to by Mrs. Blackinton if she had been a witness. See *Little* v. *Massachusetts Northeastern Street Railway*, 223 Mass. 501, 504; *Pappathanos* v. *Coakley*, 263 Mass. 401, 407; *Dorchester Trust Co.* v. *Casey*, 268 Mass. 494, 496.

Interlocutory and final decrees affirmed with costs.

*Ordered accordingly.*