# THOMPSON *v.* UNITED STATES.


CRIMINAL LAW; PLEA IN ABATEMENT, EVIDENCE; PHYSICIANS; DECLARA-
TIONS; MOTION TO STRIKE OUT; WITNESSES, ATTACKING CREDIBILITY
OF; FORMER CONVICTION OF WITNESS; ACCOMPLICES; PROCURING MIS-
CARRIAGE.

1. A demurrer to a plea in abatement to an indictment is properly sus-
tained, when the grounds assigned in support of the plea do not consist
of certain and distinct allegations of fact, but merely conclusions of law.

2. *Quære,* whether on a plea in abatement to an indictment an inquiry can
be made as to whether the indictment was found upon an indictment
by a former grand jury, without re-examination of witnesses.

3. Testimony of a physician as to the condition of a person treated by him,
and his opinion of the cause of that condition, based upon the condi-
tion observed, are admissible.

4. A motion by the accused in a criminal case to strike out "all of the evi-
dence of a physician, a witness for the prosecution, on the ground that
it is hearsay," is properly overruled, where on direct examination the
witness testified as to the condition of a patient, and gave his opinion
as to the cause of that condition, based upon what he observed, and on
cross-examination, in response to questions asked by defendant's coun-
sel, he testified as to declarations of the patient as to the cause of her
condition.

5. Sec. 1067, D. C. Code [31 Stat. at L. 1357, chap. 854], allowing the fact
of the conviction of a witness of crime to be elicited upon cross-examin-
ation of the witness to affect his credibility, does not cover the case of
a witness found guilty in a criminal prosecution, but who was granted
a new trial. Under such conditions, there cannot be legally said to
have been a conviction of the witness.

6. It is an abuse of the discretion of the trial court, and error prejudicial
to the accused, to permit the prosecution on cross-examination of the
accused, charged with procuring the miscarriage of a woman, to pro-
pound questions compelling him to admit that he had been found guilty
in another prosecution for a similar offense, where it appears that ac-
cused had been granted a new trial in such prosecution, and that the
only direct testimony as to his commission of the offense on the present
trial is that of the woman herself.

7. In this District, the woman is not an accomplice of the person who pro-
   cures her miscarriage, although she may consent thereto; and one
   charged with such an offense may therefore be convicted upon the un-
   corroborated testimony of the woman.   (Construing secs. 809, 908, D.
   C. Code, 31 Stat. at L. 1322, 1337, chap. 854, and citing *Yeager* v.
   *United States,* 16 App. D. C. 356, and *Maxey* v. *United States,* 30 App.
   D. C. 63.)   But in a prosecution for such an offense, it is proper for
   the trial court to instruct the jury that, the woman having morally
   implicated herself in the act, they should consider that fact as bearing
   upon her credibility.

No. 1824.   Submitted January 9, 1908.   Decided February 6, 1908.

HEARING on an appeal by the defendant from a judgment of
conviction of the Supreme Court of the District of Columbia
rendered upon a verdict of a jury in a prosecution for procur-
ing a miscarriage.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Edward Leon Thompson, alias Edward Leon,
was charged by an indictment in three counts, substantially,
with inserting an instrument of description unknown to the
grand jury into the womb of one Sadie Volk, a pregnant woman,
on October 11, 1905, with the intent to cause her to give
premature birth to the child with which she was then and there
pregnant; the use of said instrument not being under the di-
rection of a competent licensed practitioner of medicine, and not
being necessary to preserve the life of said woman.   The con-
clusion was that by the said means the said Edward Leon
Thompson, alias Edward Leon, did then and there cause and
procure the miscarriage of the said Sadie Volk and the pre-
mature birth of the said child, etc.

The defendant entered a plea in abatement to the indictment,
setting out the following grounds:

"1. That the indictment in the above-entitled case is not
founded upon inquest had by the grand jury at the term at
which said indictment was filed in open court.

"2. That the indictment is not predicated upon a formal presentment by the grand jury which returned the same to the court.

"3. That upon the face of the record it appears that the proceedings of the grand jury in respect of the indictment are irregular, unlawful, and in violation of the constitutional rights of the defendant; and for these causes said indictment and the prosecution thereunder, it is respectfully submitted, ought to abate."

The United States demurred to this plea, assigning, among other grounds, that its allegations were repugnant to each other, and that they were uncertain and ambiguous, failing to specify the grounds of objection with the requisite certainty and precision. The demurrer was sustained, and the defendant excepted.

. The United States produced the said Sadie Volk as a witness, who testified substantially as follows: Being pregnant, she went to the house of the defendant, whom she identified, and was shown into his office. She inquired of defendant, who was alone, if he operated. He said "Yes," and that he would perform the operation. He then inquired how long she had been pregnant, and her answer was "three months." He caused her to recline on a sofa in the office, lifted her clothes, and performed an operation on her. She could not see what he did. He operated about ten minutes. She paid him $15, and he told her if the operation did not have effect to return on the third day thereafter. She returned home. On the morning of the third day' she became ill and gave birth to the fœtus, which remained in the room. About noon Dr. McKay came to see her, and she was removed to Columbia Hospital. The witness gave the location and number of the house where she saw defendant, and described the office and furniture and a brass sign plate on the door, reading "Dr. Leon." No additional facts were developed on cross-examination. Dr. McKay was next introduced, and testified that he was called to see Sadie Volk on Sunday, and found her in her room, in bed, covered with clothes and soaked with blood. Found membrane projecting from her

vagina which meant that a child had recently been brought forth. He examined into her condition. She told him that her baby was under the bed, and he found it there. She showed symptons of having absorbed some poison, and he had her conveyed to the hospital for treatment. The fœtus was seven or eight inches long and without life in it. She was apparently a stout, robust woman, and he saw nothing to indicate the necessity of an operation to produce a miscarriage in order to save her life. The defendant objected to the statements of the patient and to the expression of the foregoing opinion by the witness. Both objections were overruled and exceptions noted. The witness was not asked to state any declarations of the patient, other than such as indicated her condition at the time, and no statement as to the manner in which the miscarriage had been produced was asked for or given.

 ˙ The defendant examined the witness at length in regard to the declarations of the patient, not only on that occasion, but subsequently. This elicited the statement that she was afraid of death, and told him on the way to the hospital that Dr. Leon gave her medicine on Wednesday night, and told her that within forty-eight hours the child would come. On the succeeding day of the trial defendant moved the court to exclude all of the evidence of the witness because it was "hearsay" only. One of the surgical staff of Columbia Hospital testified that he treated the woman at the hospital. Could not tell whether her miscarriage resulted from violence or natural causes. Knew that the fœtus was delivered permaturely. Saw nothing in the formation of the woman that would make ordinary childbirth dangerous to her health. She looked like a healthy woman. Another surgeon who had treated the woman while in the hospital said that she was suffering from an incomplete abortion or miscarriage. The fœtus had been expelled and the placenta retained. He removed what remained in the uterus. There was nothing to indicate that an abortion was necessary to preserve her life and health, and he thought that she could have borne a full-term child without danger to life or health. Crossexamined, he said that there was nothing to indicate the means

by which the abortion had been produced. The employer of the woman testified that she had cooked for his family from September, 1905, to the time of her illness. She was apparently in good health and performed her duties satisfactorily. A member of the detective force testified to visiting defendant's house on October 16, 1903, and entering his office. With some difference as to the furniture, his statement as to situation, furnishings, and the sign of Dr. Leon corresponded with the description given by Sadie Volk in her testimony. He said that defendant, whom he saw there, had lived there from five to eight' years. The defendant objected to this evidence, which was offered as tending to corroborate Sadie Volk, but the court overruled the same, and exception was taken.

The United States having closed the case with this evidence, the defendant produced his wife, whose testimony tended to show that the defendant was not in his house on October 11, 1905; was not at home on Wednesday or Wednesday night. Defendant then offered himself as a witness, and denied having seen or operated upon Sadie Volk. Had never seen her before the trial. The defendant was cross-examined at length by the counsel for the United States, as to his practice, etc., and as to the reasons why his full name was not on his sign. He said it was a sign used by an uncle of that name whom he had succeeded. He admitted that he was not a licensed physician. He was then asked if he had ever been convicted of murder. He denied that he had ever been convicted of murder or manslaughter. He was then asked if he had ever been tried for either offense. The following then occurred:

Q. Is it not true that you were convicted of murder, the charge being the killing of a woman by an abortion?

A. No sir.

Q. That you were convicted, that· a new trial was granted you, and you were convicted of manslaughter and a new trial was given you, and you were convicted again?

A. No, sir; that is not true, not on the grounds you speak of.

Q. Well, on any ground.

A. I was tried for committing an abortion. The woman did not die.

Q. The child died, though, and you were convicted of murder, were you not?

A. You mean by the jury?

Q. Yes.

A. The first trial?

Q. Yes.

A. Yes sir.

Q. Then you got a new trial and were convicted of manslaughter?

A. Yes.

Q. And then that verdict was set aside.

A. Yes, the case was nolle prossed.

The Court (to the Prosecuting Attorney) And that is all there is to it?

U. S. Attorney. Yes, that is all.

The defendant objected to each and every question so asked as to former trials, and at the conclusion moved the court to strike out all of the aforesaid testimony. The court overruled the objections and motion, defendant noting exceptions in each instance.

The defendant asked special instructions to the jury to the effect that the witness Sadie Volk was, in law, an accomplice of the defendant, and that her evidence must be corroborated in order to convict.

The general charge was not excepted to.

The jury returned a verdict of guilty, and after overruling a motion for new trial the court sentenced the defendant to imprisonment for two years in the penitentiary.

*Mr. Leo Simmons* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the United States, appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. There was no error in sustaining the demurrer to the plea in abatement. Instead of certain and distinct allegations of fact, it consists of conclusions of law. The indictment is regular, containing the formal indorsements showing it to be "a true bill," under the signature of the foreman, and was presented, and filed in open court. The argument for the appellant indicated that it was the intention to show that there had been an indictment by a former grand jury, and that the present one was found thereon without re-examination of witnesses. Without expressing an opinion on the point whether such an inquiry can be made under the rules of practice prevailing in the District, it is sufficient to say that no such fact is alleged in the plea.

2. No attempt was made by the prosecution to prove by the witness Dr. McKay any declarations made by the party on whom the unlawful operation is charged to be performed, tending to show the cause of her miscarriage, the fact of which was apparent, or to connect the defendant therewith. The evidence was confined to her condition at that time. Such evidence is clearly competent. *Lyles* v. *United States,* 20 App. D. C. 559, 564; *Northern P. R. Co.* v. *Urlin,* 158 U. S. 271, 274, 39 L. ed. 977, 15 Sup. Ct. Rep. 840; *State* v. *Howard,* 32 Vt. 380, 404; 1 Greenl. Ev. 14 ed. sec. 102; *Com.* v. *Wood,* 11 Gray, 85. The opinion of the witness, founded on the conditions observed by him, that there had been a recent miscarriage, was admissible also.

3. The defendant's counsel, not content with cross-examining Dr. McKay in respect of the matters involved in his direct examination, inquired of him as to statements made by the injured woman thereafter, and elicited the fact that when on her way to the hospital she had said to him that the defendant had given her medicine on Wednesday night, and told her the child would come within forty-eight hours. After this the examination was continued in an attempt to show that she had given

the name of another person who had given her a powder at her house, and the witness was caused to repeat the declaration relating to the defendant. On the next day the same counsel moved the court to "strike out all the evidence of the witness, on the ground that it is purely hearsay." This motion related as well to the evidence elicited by the United States as to that by the defendant. As the evidence on behalf of the United States was competent, the motion, as made, was properly denied. As the only part of the evidence that was incompetent, under the rule above stated, was that in direct response to questions propounded by the defendant himself, the court was not bound to strike it out, even on a motion to that end, and no other. It was a matter of discretion.

4. The next assignment of error relates to exceptions taken to the action of the court in permitting the district attorney to question the defendant, when a witness on his own behalf, as to his former trials for the commission of crime. As shown in the statement of the case, the witness was compelled to admit that he had been tried on an indictment charging him with the murder of a child, through producing the miscarriage of the mother, and twice found guilty by the jury, though in each instance a new trial had been granted, and the case finally dismissed.

(1) The contention on behalf of the United States, that this evidence is admissible by virtue of sec. 1067 of the Code [31 Stat. at L. 1357, chap. 854] is untenable. That section is found in chapter 25 of the Code, which relates to evidence, and reads as follows: "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, * * * but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence *aliunde;* and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the Court wherein such

proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient." Though in common parlance one may be said to be convicted when found guilty by the jury, the word in its technical, legal sense denotes the judgment of a court. If the court in the exercise of its undoubted power sets aside the verdict, there is no conviction. *Francis* v. *Weaver,* 76 Md. 457, 467, 25 Atl: 413; *Blaufus* v. *People,* 69 N. Y. 107, 109, 25 Am. Rep. 148.

(2) It remains to consider whether there are other grounds upon which the competency of the character of the cross-examination permitted in this case can be sustained. Undoubtedly, a wide latitude has been permitted in the cross-examination of witnesses, generally for the purpose of testing their credibility; and on account of the difficulty of laying down a general rule of observance in all cases, much has been left to the discretion of the trial court. It is also true that one offering himself as a witness on his own behalf subjects himself to the general rules that apply in the case of an ordinary witness offered on behalf of another. There is, however, a marked difference between the relations of the two to the case on trial, that must be taken into consideration. Inquiries that may tend to disgrace an ordinary witness, and thereby discredit his testimony, can prejudice him in no other way; they operate to the prejudice of the party on trial only in that they may lessen the weight of testimony on which he relies. As was well said by Chief Judge Church in an analogous case:

"By taking the stand as a witness, while he may subject himself to the rules applicable to other witnesses, he is not thereby deprived of his rights as a party. * * * Especially ought this protection to be afforded to persons on trial for criminal offenses, who often by a species of moral compulsion are forced upon the stand as witnesses, and, being there, are obliged to run the gauntlet of their whole lives on cross-examination, and every immorality, vice, and crime of which they may have been guilty, or suspected of being guilty, is brought out, ostensibly to effect credibility, but practically used to produce a conviction for the particular offense for which the

accused is being tried, upon evidence which otherwise would be deemed insufficient. Such a result is manifestly unjust, and every protection should be afforded to guard against it." *People* v. *Brown,* 72 N. Y. 571, 573, 28 Am. Rep. 183. Many well-considered cases sustain the general doctrine that the fact sought to be elicited from the party ought to be relevant to the issue. *People* v. *Crapo,* 76 N. Y. 288, 290, 32 Am. Rep. 302; *Hayward* v. *People,* 96 Ill. 492, 503; *Buel* v. *State,* 104 Wis. 132, 145, 80 N. W. 78; *Bailey* v. *State,* 67 Miss. 333, 7 So. 348; *State* v. *Carson,* 66 Me. 116; *State* v. *Gottfreedson,* 24 Wash. 398, 64 Pac. 523; *State* v. *Hale,* 156 Mo. 102, 108, 56 S. W. 881; *Bullock* v. *State,* 65 N. J. L. 557, 574, 86 Am. St. Rep. 668, 47 Atl. 62; *State* v. *Barker,* 68 N. J. L. 19, 27, 52 Atl. 284; *Saylor* v. *Com.* 97 Ky. 184, 30 S. W. 390; *Clarke* v. *State,* 78 Ala. 474, 481, 56 Am. Rep. 45; Thompson, Trials, Sec. 653.

The prejudicial effect of the admission forced from the defendant by the cross-examination permitted in this case is apparent. He had been shown to be an unlicensed and irregular practitioner, the sign on whose office door gave only a part of his name. The only direct testimony to his commission of the offense was that of the woman, who said she went to his office of her own motion, and asked to have the unlawful act performed. He met this by his practically unsupported denial. It is therefore quite probable that the balance may have been turned against him by the admission that he had not only before been charged with the same offense, but also that the evidence against him had been sufficiently strong to induce two separate juries to find him guilty of the charge.

Proof of the actual commission of the first offense would not be admissible as furnishing evidence of motive in the perpetration of the one for which he was being tried. While such proof, or his admission of the former verdicts, might tend to discredit him as a witness in his own or another's case, its chief and necessarily damaging effect was to furnish the jury ground for an inference that he was guilty of the offense on

trial, from the fact that he had, in all probability, committed a like offense before.

While the statute permitting an accused person to testify in his own behalf in a criminal case is a humane one, the exercise of the privilege is attended with some dangers, and these should not be increased by such a latitude of cross-examination as was permitted in this case. We are of the opinion that reversible error was committed in overruling the defendant's objections to this evidence.

5. One question remains that will necessarily arise on another trial. It is contended on behalf of the appellant that the woman, on whose testimony the conviction depends, by procuring or consenting to the unlawful operation, became an accomplice of the accused. The court, entertaining a different view of the law, denied a special instruction to that effect. He however gave the jury the following instruction: "The jury are instructed that according to the testimony of Sadie Volk, while she is not an accomplice, strictly speaking, inasmuch as, from her own evidence, she morally implicates herself in the act, the jury should consider that circumstance as bearing on her credibility. And it is also the duty of the jury, in considering all the other evidence in the case, to consider the evidence tending to contradict, or to show that she has made statements conflicting with, her present testimony, as affecting the credit you should give her evidence."

The offense of procuring the miscarriage of a woman in this District is defined in sec. 809 of the Code [31 Stat. at L. 1322, chap. 854] as follows:

"Procuring Miscarriage.—Whoever, with intent to procure the miscarriage of any woman, prescribes or administers to her any medicine, drug, or substance whatever, or with like intent uses any instrument or means, unless when necessary to preserve her life or health, and under the direction of a competent licensed practitioner of medicine, shall be imprisoned for not more than five years; or, if the woman or her child dies in consequence of such act, by imprisonment for not less than three nor more than twenty years."

By its terms, this section applies to the person or persons committing the act which produces the miscarriage, and not to the person upon whom it is committed, notwithstanding it may be done with her knowledge and consent. Not being liable to indictment thereunder, she is not an accomplice in the legal sense. "An accomplice is one who is associated with another, or others, in the commission of a crime. Liability to indictment, under ordinary conditions, is a reasonable test of the legal relation of the party to the crime and its perpetrator." *Yeager* v. *United States,* 16 App. D. C. 356, 359. The offense charged in that case was sexual intercourse with a female under sixteen years of age, and the latter was held not to be an accomplice, but the victim of the party committing the act.

Under similar statutes, in many States, it has been held that they do not apply to the woman whose miscarriage has been produced, though with her consent, but solely to the person whose act produced it. She is regarded as his victim, rather than an accomplice. *Com.* v. *Wood,* 11 Gray, 85, 93; *Com.* v. *Follansbee,* 155 Mass. 274, 277, 29 N. E. 471; *State* v. *Murphy,* 27 N. J. L. 112, 115; *State* v. *Hyer,* 39 N. J. L. 598, 601; *Peoples* v. *Com.* 87 Ky. 487, 490, 9 S. W. 509, 810; *State* v. *Owens,* 22 Minn. 238, 244; *State* v. *Pearce,* 56 Minn. 226, 230, 57 N. W. 652, 1065; *Watson* v. *State,* 9 Tex. App. 237, 244; *Hunter* v. *State,* 38 Tex. Crim. Rep. 61, 41 S. W. 602.

The supreme court of Ohio takes a like view of the statute defining the offense, but holds the woman an accomplice by virtue of another provision of the Code, which provides that "whoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he was the principal offender."

The appellant contends that the same rule applies here by virtue of sec. 908 of the Code [31 Stat. at L. 1337, chap. 854], which reads as follows: "In prosecutions for any criminal offense, all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals, and not as accessories, the intent of this section

being that as to all accessories before the fact the law hereto-
fore applicable in cases of misdemeanor only shall apply to
all crimes, whatever the punishment may be." By the common
law, all persons who command, advise, instigate, or incite the
commission of an offense, though not personally present at its
commission, are accessories before the fact, and the object of
the aforesaid section was to make all such persons principal
offenders. For reasons of public policy it obliterated the com-
mon-law distinction between accessories before the fact and
principals. *Maxey* v. *United States, ante,* 63, 72.
The section does not undertake to make one liable as a princi-
pal who could not be regarded as an accessory before the fact.
As the victim of an unlawfully procured miscarriage was not
an accessory before the fact, she is not indictable as a princi-
pal offender. The interpretation of the Ohio statute, given by
the supreme court of that State, makes it quite different from
the provision in our Code. All other persons procuring or in-
stigating the perpetration of the crime in such manner as to
make them accessories before the fact are subject to indict-
ment as principal offenders. *Maxey* v. *United States, ante,*
64, 74. But, for the reasons before given, the victim of
the crime is not. As the witness Sadie Volk was not an accom-
plice, the court did not err in refusing the instructions asked
by the defendant. The instruction in regard to the credibility
of the witness was as much as the defendant had a right to
expect.

For the error pointed out, the judgment will be reversed and
the cause remanded, with direction to set aside the verdict and
grant a new trial.                                     *Reversed.*