STATE

*vs.*

ISRAEL E. RUDMAN.

Penobscot.    Opinion April 8, 1927.

*A person charged with a criminal offense is entitled to have the accusation against him set out formally, fully and precisely, and the rules of criminal pleading require that the State negative the exception of the statute.*

*The precise words of the statute need not be followed, but an equivalent must be used which excludes with the same certainty the exception contained in the Act.*

In the instant case the exception in this statute, "unless the same was done as necessary for the preservation of the mother's life," the word "same" refers to the unlawful overt act prohibited, which is the administration of any medicine, etc., or the use of any instrument or other means.

Good faith on the part of the abortionist is not alone a defense.    The statute is intended to be an express and absolute prohibition against abortion or attempted procurement of miscarriage except when necessary to save the mother's life.

The conjunction "as" is to be construed as "because" or "since" or "it being the case that."

Under the statute the burden is upon the State to prove beyond a reasonable doubt that the woman is pregnant with child.    Absolute certainty is never exacted.    The fact of pregnancy may be established by circumstantial evidence.

Upon the evidence in this case it cannot be said that a verdict based thereon cannot be allowed to stand.

The hypothetical question propounded by the State was predicated upon facts and circumstances already in evidence which fairly tended to prove the assumed fact of pregnancy.

On exceptions by respondent.    Respondent was indicted for attempting to procure a miscarriage under P. L. 1921, chapter 153, and convicted by a jury.    Exceptions were entered to the admission of evidence; to the refusal to direct a verdict of acquittal; and the overruling of a motion in arrest of judgment.    Exceptions overruled. Judgment for the State.

Vol. 126—13

The case is sufficiently stated in the opinion.

*Artemus Weatherbee, County Attorney,* for the State.

*William R. Pattangall and Abraham Rudman,* for the respondent.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, BARNES, JJ., MORRILL, A.R.J.

STURGIS, J. The respondent was convicted of attempted abortion in violation of P. L. 1921, Chap. 153. Exception was taken to the admission of a hypothetical question propounded by the State, as also to the refusal of the presiding Judge to direct a verdict for the respondent. After verdict of guilty, the respondent seasonably filed a motion in arrest of judgment which was overruled and further exception reserved.

In view of the issues raised by the exceptions and in argument of counsel, we find it necessary to depart from the order in which the exceptions were reserved and direct our consideration first to the questions raised by the motion in arrest of judgment. Chap. 153, P. L. 1921, amending Sec. 9, Chap. 126, of the Revised Statutes, provides: "Whoever administers to any woman pregnant with child, whether such child is quick or not, any medicine, drug or other substance, or uses any instrument or other means, unless the same was done as necessary for the preservation of the mother's life, shall be punished, if done with intent to destroy such child and thereby it was destroyed before birth, by imprisonment for not more than five years or by fine not exceeding one thousand dollars; but if done with intent to procure the miscarriage of such woman, by imprisonment for less than one year, and by fine not exceeding one thousand dollars, and any person consenting and aiding or assisting shall be liable to like punishment."

The substantial averments of the indictment under which the respondment was convicted are that on the 14th day of February, 1925, he "feloniously did use a certain instrument, a more particular description being to said grand jurors unknown, in and upon the body of one Jennie Gilbert, a woman then and there pregnant with child, by then and there forcing and thrusting said instrument into the the body and womb of the said Jennie Gilbert, it not being necessary for the preservation of the life of said Jennie Gilbert to use said instrument as aforesaid."

The grounds in arrest stated in the motion are that the indictment is insufficient in that (1) it does not allege that the miscarriage therein referred to was not necessary to preserve the life of.the woman, but alleges "it not being necessary for the preservation of the life of the said Jennie Gilbert to use said instrument as aforesaid"; (2) it does allege "it not being necessary for the preservation of the life of said Jennie Gilbert", whereas the statutory language is, "unless the same was done *as necessary* for the preservation of the mother's life."

A person charged with a criminal offense is entitled to have the accusation against him set out formally, fully and precisely, and the rules of criminal pleading require that the State negative the exceptions of the statute. *State* v. *Webber*, 125 Me., 319; *State* v. *Keene*, 34 Me., 500; *United States* v. *Cook*, 17 Wall. (84 U. S.), 168. And while the precise words of the statute need not be followed, and equivalent must be used which excludes with the same certainty the exceptions contained in the Act. Bishop on Statutory Crimes, 755; 1 C. J., 322, and cases cited. The sufficiency of the State's negative averment in the indictment before us is the issue raised by the motion in arrest.

The language of the statute is somewhat unusual in context and its grammatical relations, and, so far as a careful examination discloses, varies in important details from similar statutes of the other states except Illinois: The exception in our statute is written, "unless the same was done as necessary for the preservation of the mother's life." To what does "same" refer? The unlawful or overt act prohibited in the administration of medicine etc., or the "use of any instrument or other means." The evil intent essential to the crime charged is stated at the end of the Section to be, "if done with intent to procure the miscarriage of such woman." The offense is complete when an overt act is done with the intent defined by the statute, unless the act falls within the exception. Context and phraseology convince us that the phrase "unless the same was done" finds its antecedent in the unlawful acts enumerated rather than in the evil intent which must concur.

The cases cited by counsel for the respondent as opposed to this view are based on statutes of other states in which the exceptions expressly or by clear implication relate to the necessity of procuring the miscarriage, rather than to the means used to that end. In *State* v. *Stevenson*, 68 Vermont, 529, the conclusion that the necessity of

procuring a miscarriage must be negatived is based on Sec. 4247, R. L. 1880, of that State, in which the exception, "unless the same is necessary to preserve her life", clearly relates to the procurement of a miscarriage rather than to the particular act which was done in the attempt to accomplish it.  *Willey* v. *State*, 46 Ind., 363, and *Bassett* v. *State*, 41 Ind., 303, supporting a similar rule, are controlled by statutes substantially similar to that of Vermont.  The same is true of *State* v. *Meek*, 70 Mo., 355, and *Hatchard* v. *State*, 79 Wisconsin, 357.

These decisions from courts of last resort in states whose statutes are different from those of our own cannot control the construction of Chap. 153, P. L. 1921.  The legislative intent as there expressed furnishes the only rule and guide.  We are convinced that the first ground of arrest advanced by the respondent is untenable.

In support of the second ground of arrest, the argument is advanced that under this statutory exception necessity in fact for the preservation of the mother's life need not be established.  Counsel in the brief say that good faith is a defense, and that a proper construction of the words of the statute leave the question open as to whether or not the person who operated considered it necessary when done.  We are not prepared to subscribe to such an interpretation of this Act.  The history, purpose and need of criminal legislation prohibiting this offense militates against such a doctrine.  The language of the Act itself falls short, we think, of indicating a legislative intent to thus open the bars raised against this crime.  Abortion and attempts to procure a miscarriage are common offenses and by no means confined to the members of the medical profession. Court records evidence such practices among laymen of both sexes, and the application of this statute cannot be viewed from the physician's standpoint alone.

It is well known that occasion arises where in the exercise of proper surgical advice and care it becomes necessary, in order to save the mother's life, to remove the unborn foetus.  To such highly honorable and proper acts, in accord with the highest ethics of the medical profession, the dictates of humanity, and all legal precepts, the statute has and can have no application.  But to the destruction of unborn life for reasons, whatever they may be, other than necessity to save the mother's life, the law is intended, we believe, to be an express and absolute prohibition.

In the plain meaning of the words of the statute our conclusion is verified. An accepted definition of the conjunctive "as" is "because," "since," "it being the case that." Webster's New Int. Dictionary. If substitution be made and the statute read "unless the same was done 'because' (or) 'since it was' (or) 'it being the case that it was' necessary," no ambiguity remains and the legislative intent is clear.

It is stated in text that it is always a valid defense to a charge of abortion that the procurement was necessary in order to save the mother's life or the life of her unborn child; and while this is generally true by virtue of exceptions contained in the statutes, it is true even though the statute makes no express exception as to such necessity. 1 Corpus Juris, 317, citing *Com.* v. *Sholes*, 13 Allen (Mass.), 554, 558. To this statement we find no exception. On the other hand, in an exhaustive examination of legislative and judicial expressions of other states, we are unable to find, except in the states of Virginia and West Virginia, precedent for the doctrine that "good faith" alone is a defense. A survey of the available revisions and session laws of other states discloses, that while in some states abortion upon the advice of one or more consulting physicians is by statute excepted from the general penal statute prohibiting the crime, in none except those of Virginia and West Virginia, as noted, is the belief of necessity or "good faith" of the abortionist alone sufficient defense. In a majority of the states necessity in fact for the preservation of the mother's life is the only exception justifying the act. The statutes of other states cannot control this Court in its construction of the language of Chap. 153. The trend and weight of legislative thought in other states, however, is instructive.

We are of opinion that the language of our Act compels the conclusion that the only exception to criminal responsibility for abortion, or attempted procurement of miscarriage, is necessity in fact of the preservation of the mother's life. With this view of the proper construction of this statute, we see no insufficiency in the negative averments of the indictment under which the respondent was convicted. It is drawn in strict conformity to the form provided in Whitehouse's Criminal Procedure, 62. This text on procedure and forms, particularly applicable to criminal practice in this State, has now for years received the approval of Bench and Bar of this State. Indictments containing negative averments of the exceptions of the

statute in conformity to the form prescribed by Mr. Whitehouse, and substantially in accord with this indictment under consideration, have repeatedly passed under the scrutiny of able practitioners and the Judges of this Court, without the questions here presented being raised. This precedent, and long time acquiescence in its use, is not decisive, but it is entitled to great weight.

So far as we can discover, the statute of Illinois alone conforms in its excepting clause to that of Maine. In the abortion statute of that state the excepting clause reads, "unless the same were done as necessary for the preservation of the mother's life." In *Beasley* v. *The People*, 89 Ill., 571, the indictment charged that by means of a certain instrument the respondent produced an abortion on the deceased, "it not being then and there necessary to cause such miscarriage for the preservation of" her life. In another count the respondent was charged with administering a noxious and abortifacient drug with intent to produce a miscarriage, and the negative averment was, "it not being then and there necessary to administer said noxious and abortifacient drug for the preservation of the life" of the deceased. Recognizing the general rule that it is necessary to negative the exceptions of the statute, but that the precise words of the statute need not be employed, that Court holds that the negative averments of the indictment are sufficient.

For the reasons stated the exceptions to the overruling of the motion in arrest of judgment cannot be sustained.

Under the statute the burden is upon the State to prove beyond a reasonable doubt that the woman is pregnant with child. Whether such child is quick or not is immaterial. Absolute certainty in the proof of pregnancy, however, is never exacted. It may be established by circumstantial evidence. 1 R. C. L., 77.

In *State* v. *Stafford*, 145 Iowa, 285, the woman had been indulging in sexual intercourse. She missed her menses on Dec. 25th and 26th, 1908, and in January became convinced that she was pregnant, and informed the accused. A drug was procured and taken, resulting in her serious illness on Jan. 20, 1909. During the first week of February following she discharged what resembled a blood clot. With no history of prior ill health or other explanation of the suspension of her menstrual flow, such evidence was held sufficient proof of pregnancy to support a verdict, even though two physicians expressed the opinion that at so early a period it could not be known with cer-

tainty that she was pregnant without microscopic examination or the discovery of the ovum.

This Iowa case presents facts strikingly similar to those appearing in this record. The young woman, Jennie Gilbert, had a normal menstrual period and flow during the first days of January, 1925. Some few days later she had sexual relations with a young man boarding in the house where she was employed as a domestic. Acts of intercourse occurred several times during the middle of the month. In the last days of January she testifies that she felt weak and had no appetite for food. Although previously regular in her menses, she had no menstrual flow in February. On the 12th of February she went to the office of the respondent, a practicing physician, and stated to him that she thought she was pregnant. She says he examined her and said she was pregnant, and made an appointment for an operation. The following Saturday, accompanied by the young man charged with responsibility for her alleged condition, she went again to the respondent's office, and after the payment by the boy of $50 as charged by the doctor, an operation was performed.

She describes the instruments used and asserts that she suffered much pain. In accordance with the directions of the respondent, as she says, she returned to her home, remained in bed for two days, returning to the doctor's office again on the following Tuesday. At that time, she testifies, he removed clots and fleshy matter from her person. She says she was given a prescription, and at a later call was given a second prescription. About a week later she was taken seriously ill and removed to the Eastern Maine General Hospital, and an abdominal operation was performed. The operating surgeon, Dr. E. B. Sanger, testifies that he found adhesions of the uterus, ovaries, fallopian tubes and intestines, with enlargement and inflammation of and a small tear in the uterus. The surgeon testifies that the conditions found in the girl were in his opinion due to some acute inflammation, including in all probability a previous dilation of the womb.

Dr. Sanger was asked the following questions:

Q. Assuming it to be a fact that a girl 17 years of age who had been regular in her menstrual periods menstruated along the first of January, the 3rd or 4th, and whose menstrual periods usually continued for four or five days, had sexual intercourse within four or five days after the cessation of that menstrual period and then later had

sexual intercourse one or more times and she felt weak, did not have appetite for food, did not feel in her normal condition, and had not menstruated again by the 10th of February—would that in your mind indicate or not indicate pregnancy?

A.   It might and it might not.

Q.   Would it be a symptom of pregnancy?

A.   Yes sir.

The respondent in cross examination questioned Dr. Sanger as to the possibility of tubercular peritonitis being the cause of the adhesions, but the doctor eliminated this theory from consideration by the statement that no evidence of such condition was found.   The presence of veneral disease advanced by the respondent was as fully removed by the negative report of the pathologist.

Upon the history of the sexual relations of this girl in the light of the date of her last menstrual period, physicians called by the State and the respondent both expressed doubt as to the possibility of determining pregnancy with accuracy at the time the respondent is alleged to have operated.

A further review of the testimony as it appears in the record does not appear to be necessary.   Absolute certainty of the pregnancy of the girl is not and could not be established.   The circumstances, however, we think, are sufficient for the jury to find beyond a reasonable doubt that it existed.   No explanation or reasonable cause for the suspension of the girl's February menses appears.   If the jury believed her statement, and they evidently did, the discharge of clots and fleshy matter some few days after the alleged operation gives strength to the claim of pregnancy.   Her statement to the doctor, if true, that she thought she was pregnant is of some weight.   In *State* v. *Alcorn*, 7 Idaho, 599, 607, it is held that the fact the respondent used a probe is a corroborating circumstance to be considered.

We cannot say that the evidence offered by the State to establish the pregnancy of the woman, Jennie Gilbert, is so defective or weak that a verdict based upon it could not be allowed to stand.   The other elements of the offense were sufficiently proven, we think, and an instruction to the jury directing a verdict for the respondent was properly refused.

After the witness, Jennie Gilbert, had completed her testimony, and Dr. E. B. Sanger, the surgeon, had testified in answer to the hypothetical question, that the facts and conditions therein assumed

would be a symptom of pregnancy, the following question was propounded to him by the State:

Q. Assuming that Jennie Gilbert was pregnant upon the 14th day of February, from your examination of her would you say that an operation to relieve pregnancy were necessary?

Objection was made on the ground that the State had no right to assume the fact of pregnancy, the colloquy in the record indicating that the ground of the objection was that there was no evidence to support this assumption. The exception is pressed before this Court upon that ground. Objection to the form of the question, raised in argument here for the first time and not stated at the trial of the cause, cannot be considered. *Heal* v. *Fertilizer Works*, 124 Me., 143. The admission of the question was not error. There was already in evidence, in the testimony of the girl and Dr. E. B. Sanger, statements of facts and circumstances which fairly tended to prove the fact of pregnancy assumed. Evidence which fairly tends to prove the facts assumed is sufficient. *Heal* v. *Fertilizer Works*, supra; *Powers* v. *Mitchell*, 77 Me., 369; Greenleaf on Evidence (16 Ed.), Vol. 1, p. 561.

A careful reading and consideration of the record of this case convinces us that the respondent attempted to procure the miscarriage of the girl. His exceptions present no meritorious defense. The entry is,

*Exceptions overruled.*
*Judgment for the State.*