## CRICHTON v. UNITED STATES.
### No. 6908.

United States Court of Appeals for the District of Columbia.
Decided June 7, 1937.

William E. Leahy, William J. Hughes, Jr., and Dorsey K. Offutt, all of Washington, D. C., for appellant.

Leslie C. Garnett, David A. Pine, and Irvin I. Goldstein, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

Appeal from a judgment of the District Court of the United States for the District of Columbia.

The appellant, MacPherson Crichton, was convicted and sentenced in the lower court upon an indictment charging him with a violation of section 809 of the Code of the District of Columbia (D.C.Code 1929, T. 6, § 33), which section reads as follows:

"Whoever, with intent to procure the miscarriage of any woman, prescribes or administers to her any medicine, drug, or substance whatever, or with like intent uses any instrument or means, unless when necessary to preserve her life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned for not more than five years; or if the woman or her child dies in consequence of such act, by imprisonment for not less than three nor more than twenty years."

The indictment is in three counts, the first of which reads as follows:

"That one Theodora I. Charlot, on to wit, the twenty-second day of May, 1936, was pregnant with child, and that on, to wit, the said twenty-second day of May, 1936, and at the District of Columbia aforesaid, one MacPherson Crichton, well knowing the premises aforesaid, unlawfully, feloniously, knowingly, wilfully and with intent to procure the miscarriage of the said Theodora I. Charlot, in and upon the said Theodora I. Charlot, then and there being, did use a certain instrument, to wit, a catheter, the use of said instrument as hereinbefore alleged being not then and there necessary to preserve the life or health of the said Theodora I. Charlot, as he, the said MacPherson Crichton, then and there well knew. * * * "

The second count of the indictment is identical with the first except for the statement that the accused used certain means and instruments to procure the miscarriage, the exact nature of which are to the grand jurors unknown. The third count is identical with the first except for the statement that the appellant used certain means to procure the miscarriage, the exact nature of which is to the grand jurors unknown.

After the opening address of the government's counsel to the jury, the defendant's counsel made an oral motion for a directed verdict and interposed an objection to the introduction of any testimony upon the opening statement made by the counsel for the government, which motion was overruled by the court.

The basis of the motion, as set out by defendant's counsel, was the contention "that under section 809 of the District of Columbia Code [D.C.Code 1929, T. 6, § 33] it must be alleged and proved not that the use of the means or instruments but that the miscarriage or abortion itself must [not] be necessary to preserve the woman's life; that the exception in the statute is aimed not at the use of the means but at the fact of the miscarriage, and that there being no allegation in any of the counts of the indictment that the miscarriage was not necessary to preserve the life of the woman and no offer of proof to this effect in the government's opening statement appellant's motion for a directed verdict should be granted and his objection to the introduction of testimony sustained."

The first assignment of error presented by the appellant is based upon the order of the court overruling the motion for a directed verdict thus filed by the defendant. Appellant claims that the indictment does not charge an offense within the statute inasmuch as it does not deny that the miscarriage of the woman was necessary to preserve her health or life, but instead of such a denial it simply alleges that the use of a catheter or other means of procuring a miscarriage of the woman was not necessary to preserve her life or health.

We do not agree with this contention. The form of the indictment follows the grammatical construction and intent of the statute. The statute prohibits the use by any person of any substance or instrument for the purpose of procuring the miscarriage of any pregnant woman, unless when such use is necessary to preserve the life or health of the woman. The crime as denounced by the statute and charged by the indictment does not necessarily contemplate an actual miscarriage by the woman, but is complete when an attempt to procure a miscarriage by such means is

made, regardless of whether it results in an actual miscarriage of the pregnant woman or not. The indictment accordingly does not charge the defendant with actually procuring a miscarriage in this case, but with using certain substances and instruments with intent to procure a miscarriage. It is the purpose of the statute to prevent any one from attempting to procure the miscarriage of a pregnant woman by means of certain substances or instruments, unless the use of such substances or instruments be necessary to preserve her life or health, and this regardless of whether an actual miscarriage results. In this particular the indictment properly conforms to the statute.

The procedure of the courts in this District since the enactment of the present statute confirms our conclusion. Section 809, supra, was enacted on March 3, 1901, 31 Stat. 1322, c. 854, and the present indictment accords with those brought under the section since it was enacted. In Maxey v. United States, 30 App.D.C. 63, decided in 1907, in Thompson v. United States, 30 App.D.C. 352, 12 Ann.Cas. 1004, decided in 1908, and in Harrod v. United States, 58 App.D.C. 254, 29 F.(2d) 454, decided in 1928, indictments similar in form to that now in question were followed without dispute. It is true the present question was not specifically raised in any of these cases, nevertheless in each case the trial proceeded upon the theory that such an indictment was sufficient. In two of the cases convictions upon the indictment were affirmed by this court, but in one of them the conviction was reversed upon wholly different grounds. It does not appear therefore that this construction of the statute has ever been questioned in the courts of the District at any time since its enactment in 1901.

The appellant cites statutes and cases from most of the states of this country designed to prove that statutes somewhat similar, but not identical, with the one now in question have been construed as requiring proof that it was not necessary to procure a miscarriage in order to save the life or health of the pregnant woman. On the other hand in State v. Rudman, 126 Me. 177, 136 A. 817, a case wherein the statute and indictment are very similar to those herein involved, it was held that the unlawful or overt act prohibited was the use of the instruments or other means with intent to cause a miscarriage.

■ It is contended by appellant that there was no proof of pregnancy introduced at the trial. We think the record does not sustain this charge. The history of the woman and her condition as described by the testimony is convincing that she was pregnant at the time when she was treated by appellant. Dr. Mandy of Gallinger Hospital testified that he examined her and reached the conclusion from her physical condition that she had suffered an abortion. Moreover, it appears in the memorandum book of appellant which was produced in evidence at the trial that his diagnosis was "8 weeks miscarriage" and "inevitable abortion apparent." The jury heard the testimony upon this subject and we think the proof of pregnancy was sufficient to support its findings.

■ The appellant charges that the testimony of witness Dr. Mandy relating to his examination of Mrs. Charlot was incompetent, claiming that it was based partly upon his physical examination of the woman and partly upon what she told him of her history. Dr. Mandy, however, testified that he was able to reach an opinion from his physical examination alone, and from it he concluded that Mrs. Charlot had had an abortion.

■ The appellant contends that the lower court committed error in refusing to give defendant's prayer No. 2 together with his instructions to the jury, namely, "The jury is instructed that unless it finds that the alleged operation is not necessary to preserve the life or health of the woman it must acquit the defendant." In answer to this objection it may be noted that the trial court read the statute to the jury including the modifying clause "unless when necessary to preserve her life or health," and also made the following statement to the jury: "In other words the law makes it an offense for anyone to procure the miscarriage of a woman either by the use of an instrument or by the use of medicine or drugs, or any substance, or by any means, unless it is necessary to preserve her life or health." It was not claimed by the defendant at the trial that an abortion had been committed and that it was necessary to save the life or health of Mrs. Charlot. The defense was founded upon the claim that no abortion had been committed, therefore the failure of the court to give more extended instructions upon this subject was not prejudicial to the defendant.

■ The appellant claims that the evidence is palpably insufficient to sustain the verdict and that a motion for a directed verdict should have been granted. We do not find it necessary to review the testimony in detail, but consider it sufficient to say that the evidence contained in the bill of exceptions leads us to the conclusion that the verdict of the jury was fully justified.

The appellant charges that there was a fatal variance by the verdict on the third count alleging the use of "means unknown" to commit the offense. We find, however, that Mrs. Charlot's testimony on this subject was not sufficiently definite to enable the jury to feel certain about the name or character of the instrument used in the operation, and that there was no variance.

■ The appellant charges that inasmuch as the defendant was acquitted on counts one and two of the indictment the verdict of guilty on count three is repugnant and cannot be sustained. In the first count the instrument by means of which the abortion was alleged to be produced is described as a catheter; in the second count it is alleged that the exact nature of the means and instruments whereby it was produced were to the grand jury unknown; and the third count charged the use of means the exact nature of which is to the grand jury unknown. Appellant claims that inasmuch as appellant was acquitted under count two which charged the use of certain means and instruments a conviction under count three is inconsistent and repugnant and cannot be sustained. We cannot sustain this contention.

In Borum et al. v. United States, 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513, an indictment was found in four counts charging three defendants with murder in the first degree. The first count named one of the defendants, the second count another, and the third count the third defendant, as having held the pistol with which the crime was committed, and the fourth count alleged that the weapon was held by one of the defendants but that his name was unknown to the grand jury. All three of the defendants were found not guilty under the first three counts but guilty under the fourth and sentenced to death. A question was certified by this court as follows: "Can the judgment of the Supreme Court of the District of Columbia, based upon the conviction of the defendants on the fourth count of the indictment, be sustained, in view of the acquittal of each and all of the defendants of the charge of murder in the first degree as contained in the first three counts of the indictment?" The Supreme Court answered the question "Yes," citing Dunn v. United States, 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161. See, also, opinion by Parker, Circuit Judge, 4th Circuit, in Samuel Allen v. United States (C.C.A.) 89 F.(2d) 954, decided May 4, 1937, for a comprehensive review of this subject. The verdicts were, of course, inconsistent and repugnant, but not legally objectionable.

The judgment of the lower court is affirmed.

STEPHENS, Associate Justice.

I dissent. I am of the view that the statute means to denounce the use of medicines, drugs, substances, instruments or means with intent to procure a miscarriage unless *the miscarriage* is necessary to preserve life or health. I think State v. Rudman, 126 Me. 177, 136 A. 817, not persuasive because the Maine statute [Me.Rev. Stat.(1930) c. 135, § 9] is materially different from that here involved. I think, moreover, that the local decisions relied upon by the majority for a contrary construction of the statute are quite indecisive of the question, because while in those cases the indictments were drawn on the majority's theory of the meaning of the statute no question was raised as to the sufficiency of the indictments under the statute. Moreover, the administrative construction of the statute is not binding upon the court. It is to be noted further that in two of the cases relied upon by the majority, to wit, Maxey v. United States, 30 App.D.C. 63, and Thompson v. United States, 30 App.D.C. 352, 12 Ann.Cas. 1004, the Government, notwithstanding that it had drawn the indictments upon the theory of the statute subscribed to by the majority, nevertheless introduced evidence under the contrary theory, that is to say, introduced evidence that it was the miscarriage that was not necessary to preserve life or health.

I think also there was prejudicial error in the admission of the testimony of Dr. Mandy. A careful reading of the record convinces me that his testimony to the effect that an abortion had been produced, and that it was at least partly an induced abortion, was based in part upon the hearsay statement of Mrs. Charlot.