**WELCH et al. v. UNITED STATES.**

No. 8392.

United States Court of Appeals for the District of Columbia.

Decided March 31, 1943.

Writ of Certiorari Denied June 7, 1943.
63 S.Ct. 1329, 87 L.Ed. ——.

Mr. James J. Laughlin, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Bernard Margolius, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

No useful purpose would be served by detailing the lascivious evidence in this case. It was ample to support the verdict. The indictment was in two counts, the first charging that appellants compelled, induced, enticed and procured a certain female to engage in prostitution; the second charging an attempt.[1] This was

---

[1] D.C.Code 1940, § 22—2705 provides: "That any person who, within the District of Columbia shall * * * compel, induce, entice, or procure or *attempt* to compel, induce, entice, or procure her [any female] to engage in prostitution, * * * shall be guilty of a felony and, upon conviction, shall be punished by imprisonment

entirely proper.[2] It is common practice to charge the commission of an offense in one count and an attempt to commit the offense in another.[3]

■■ The fact that the court directed a verdict on the first count, and that the jury convicted appellants on the second, resulted in no inconsistency.[4] The attempt to commit the offense, under the law and the circumstances of this case, was in itself a separate and distinct offense.[5] Moreover, even if there had been inconsistency between the directed verdict and the verdict found by the jury, that would constitute no reason for setting it aside.[6]

■ After both the appellants and the government had closed their cases, the trial court adjourned. That evening, and the following morning, inflammatory articles were published in some Washington newspapers concerning appellants. When the court reconvened next morning, counsel for appellants called these facts to the attention of the trial judge. The jury was sent to the jury room and a marshal was instructed to get from them any newspapers they might have. The marshal returned with two copies of a morning paper. Counsel for appellants then moved for a new trial. Government counsel stated that, if it appeared any juror had become acquainted with the content of the articles, a mistrial should be declared. The trial judge stated that he would declare a mistrial, if the fact appeared that any juror had become acquainted with their contents. Thereupon, the jurors were brought back to the courtroom and questioned by the judge. They were asked, as a group, whether they had read any articles about the case or the trial, particularly in the two newspapers mentioned. No juror responded to these questions. They were asked whether any juror had heard about any such articles, particularly any article in the Washington News or the Washington Herald. One member of the jury stated that he had been told there was an article in the Washington News on the day before, but he had not read it, and had not been told its contents, and specifically stated he did not know what was in the article. The court then overruled the motion for a mistrial and an exception was noted. Appellants also condemn the conduct of the police in supplying to the newspapers the material which appeared in the articles concerning them. But it is conceded by appellants that the trial judge did everything possible to safeguard a fair trial. Under the circumstances there was no error.[7] The case of Kleindienst v. United States[8] is clearly distinguishable.

■■ In this situation, it is necessary to reconcile our solicitude for the rights of accused persons,[9] on the one hand, with

for not more than five years and by a fine of not more than $1,000." [Italics supplied.]

Cf. Crichton v. United States, 67 App. D.C. 300, 301, 92 F.2d 224, 225, certiorari denied, 302 U.S. 702, 58 S.Ct. 22, 82 L. Ed. 542.

[2] 18 U.S.C.A. § 557; Welsh v. United States, 2 Cir., 267 F. 819, mandamus denied, Ex parte Welsh, 254 U.S. 607, 41 S.Ct. 6, 65 L.Ed. 435, certiorari denied, 254 U.S. 637, 41 S.Ct. 9, 65 L.Ed. 451. See Code of Crim.Proc. (Amer.Law Inst. 1931) § 185 and annotations. And see cases cited in Kleindienst v. United States, 48 App.D.C. 190, 199.

[3] Welsh v. United States, cited supra note 2; Posey v. United States, 26 App. D.C. 302.

[4] See De Jianne v. United States, 3 Cir., 282 F. 737, 742; Posey v. United States, 26 App.D.C. 302; Partridge v. United States, 39 App.D.C. 571, 580, Ann.Cas. 1917D, 622; Crichton v. United States, 67 App.D.C. 300, 303, 92 F.2d 224, 227, certiorari denied, 302 U.S. 702, 58 S.Ct. 22, 82 L.Ed. 542.

[5] Sayre, Criminal Attempts, 41 Harv. L.Rev. 821, 834; Arnold, Criminal Attempts, 40 Yale L.J. 53, 73; Strahorn, The Effect of Impossibility on Criminal Attempts, 78 U. of Pa.L.Rev. 962.

[6] American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 252, and authorities there cited, 317 M.S. 519, 63 S.Ct. 326, 87 L.Ed. —.

[7] McCarthy v. Spring Valley Coal Co., 243 Ill. 185, 90 N.E. 372; Phillips v. Board of Education, 21 Ohio App. 194, 153 N.E. 119.

[8] 48 App.D.C. 190.

[9] See Klose v. United States, 8 Cir., 49 F.2d 177, 181: "It is the duty of the trial judge to maintain the integrity of trials by jury, and if it appears at any stage of the trial before verdict that misconduct of any juror or other person has tainted the panel with any sort of corruption, or intimidation, or coercion, the trial should be stopped and a mistrial granted"; certiorari denied, 284 U.S. 626, 52 S.Ct. 11, 76 L.Ed. 534; United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553; Sunderland v. United States, 8 Cir., 19 F.2d 202, 208.

our insistence upon the freedom of the press,[10] on the other. We. are not willing, in this country, to exercise such severe restraints upon newspaper publicity during trials,[11] as has been done in England.[12] This has resulted, sometimes, in embarrassment; but, nevertheless, so long as the press falls short of actual contempt,[13] it is better to depend upon the self-imposed restraints and disciplines of the professional group, than to stifle and censor a traditionally free press by governmental restraints.[14] This being true, it results that our courts must operate, realistically, under conditions' which sometimes imperil the purity of verdicts. It would be completely unrealistic to hold that disqualification of the jury occurs whenever police officers overstep the bounds of proper conduct, by releasing information concerning accused persons, or when newspapers violate their own canons of professional conduct, by printing inflammatory articles during the course of a trial. As Mr. Justice Holmes has said: "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."[15] Unless the jurors were improperly influenced,[16] or, at least, unless there is reason to believe that they were subjected to improper influence by such articles,[17] there is no occasion for declaring a mistrial.[18] In the present case, there was nothing to indicate that the jury or any juror had been so influenced or in any way affected. The trial judge acted promptly and properly to

meet the situation, and no harm resulted to appellants.

Affirmed.

EDGERTON, Associate Justice (dissenting).

The female defendant had a record of thirteen arrests for prostitution. Since she did not take the stand, this record could not be used against her and her husband in open court. If it reached the jury out of court, it probably created just as much prejudice. Two copies of a newspaper article which told the whole story were found in the jury room. The judge thought, and the district attorney conceded, that this article was so prejudical that appellants were entitled to a new trial if the jurors read it.[1] If the jurors had been polled, and all had denied reading the article, it might have been within the court's discretion to deny a new trial. However, that is not what occurred. When the judge asked the jury whether they had read newspaper articles about the trial, no one replied; and when he asked whether they had heard about the articles, only one juror replied. I think this was not a case in which silence could safely be interpreted as a denial. If anything, silence implied an admission. The judge's questions could hardly fail to remind the jury that they ought not to have read anything about the trial. "Have you read the articles?" was roughly equivalent to "Have you committed the impropriety of reading the

---

[10] Lovell v. City of Griffin, 303 U.S. 444, 451, 58 S.Ct. 666, 82 L.Ed. 949; Schneider v. State of N. J., 308 U.S. 147, 161, 60 S.Ct. 146, 84 L.Ed. 155; O'Rourke, *Freedom of the Press and Contempt of Court,* 7 Geo.Wash.L.Rev. 234.

[11] Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192; Nye v. United States, 313 U.S. 33, 50, 51, 61 S.Ct. 810, 85 L.Ed. 1172. See Mr. Justice Holmes, dissenting in Toledo Newspaper Co. v. United States, 247 U.S. 402, 422, 38 S.Ct. 560, 62 L.Ed. 1186.

[12] 7 Halsbury, Laws of England (2d ed. 1932) Contempt, § 8 et seq.; MacLatchy, *Contempt of Court by Newspapers in England and Canada* (1938) 16 Can.Bar Rev. 273–276; cf. Bridges v. California, 314 U.S. 252, 264, 62 S.Ct. 190, 86 L.Ed. 192.

[13] Dangel, Contempt (1939) § 355, et seq.; cf. Telegram Newspaper Co. v. Commonwealth, 172 Mass. 294, 52 N.E. 445,

44 L.R.A. 159, 70 Am.St.Rep. 280.

[14] Bridges v. California, 314 U.S. 252, 270, 271, 62 S.Ct. 190, 86 L.Ed. 192.

[15] Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 20 Ann. Cas. 1138.

[16] Ft. Wayne Iron & Steel Co. v. Parsell, 49 Ind.App. 565, 585, 94 N.E. 770, 777; Hatton v. Stott, 220 Mich. 262, 268, 189 N.W. 850, 852.

[17] Mattox v. United States, 146 U.S. 140, 150, 151, 13 S.Ct. 50, 36 L.Ed. 917; McKibben v. Philadelphia & R. Ry., 3 Cir., 251 F. 577.

[18] United States v. Reid, 12 How. [U.S.] 361, 366, 13 L.Ed. 1023; Harrison v. United States, 6 Cir., 200 F. 662, 669; Itow v. United States, 9 Cir., 223 F. 25, 28, appeal dismissed, 233 U.S. 581, 34 S.Ct. 699, 58 L.Ed. 1102.

[1] Note, 46 L.R.A.,N.S., 741, 742 ff.

articles?" A juror who could honestly exculpate himself by a denial would be likely to do so. Even apart from any implied admission, it was exceedingly probable in the absence of any denial that some jurors had read an article which was available to all and could not fail to be interesting to all.[2] I think a mistrial should have been granted. In other respects I concur in the opinion of the court.

[2] Griffin et al. v. United States, 3 Cir., 295 F. 437, 440; Harrison v. United States, 6 Cir., 200 F. 662, 669.