94

ELLEN M. BRICKLEY

*vs.*

CHRISTOPHER W. LEONARD, INDIVIDUALLY AND AS ADMINISTRATOR
OF THE ESTATE OF FENWICK T. LEONARD.

Cumberland.   Opinion April 9, 1930.

*Arthur D. Welch*, for complainant.
*Sherman I. Gould*,
*Frank H. Haskell*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, BARNES, FARRINGTON, JJ.

FARRINGTON, J. This is a bill in equity, in the nature of one asking for specific performance, praying that the defendant, brother and sole heir of the deceased, be adjudged and decreed a trustee for the plaintiff of certain real estate situated on the Easterly side of Roberts Street in Portland, Maine, as described in the bill, and that he be ordered to convey said real estate to the plaintiff; that the defendant, as administrator, and also as the sole heir at law, be adjudged and decreed trustee for the plaintiff of certain personal property contained in the house on Roberts Street and of savings deposit funds to the amount of ten thousand dollars ($10,000.00); and that the defendant, as said administrator and as sole heir at law, be ordered to convey to the plaintiff full title to the said personal property, and to pay over to the plaintiff the sum of ten thousand dollars ($10,000.00).

The facts as found by the sitting Justice and as disclosed by the record are briefly as follows: The plaintiff was a niece of the wife of Fenwick T. Leonard, Annie L. Leonard, who resided in said Portland, and died there on April 21, 1923. The plaintiff, who was living in St. John, New Brunswick, came to her aunt's funeral and remained there with Fenwick T. Leonard until June 29, 1923, when she returned to her home in St. John, where she was living with her sisters and a brother. The parents were dead and the

plaintiff was the acknowledged head of the family. The evidence all tends to show that they were living happily and comfortably, among congenial friends and acquaintances and under circumstances in every way pleasant, agreeable and satisfactory.

After her return, the deceased asked her to come back to his home and stay with him. He also asked one Mrs. Griffin, a friend, to write the plaintiff urging her to come, and directing her to tell the plaintiff he would give her the home where he lived. Mrs. Griffin wrote as requested and it appears that the deceased himself wrote the plaintiff.

On August 14, 1923, the plaintiff came to Portland. Her sister, Julia, testified that the plaintiff, when she came, did not intend to remain in Portland. It is clear that something happened to change her plans for, after being there a short time, she wrote to St. John and arrangements were then made by her sister to break up the home and for all to come to Portland. At that time there were, beside the plaintiff, two sisters and one brother living together in St. John. When they came to Portland they found that changes in the house had been made by the deceased to make comfortable living accommodations. Until the death of Fenwick T. Leonard on April 19, 1929, they all lived together at 71 Roberts Street, Portland. The evidence shows that the plaintiff was at the head of the household. She received no wages. Her services consisted of more than general housework. She gave careful and watchful attention to the personal needs and comfort of the deceased and worked inside and outside of the house to beautify it and the grounds, as one would with his own property. The sitting Justice says, "I find that she occupied the position of friend, relative and housekeeper combined, a position of service going beyond that of a mere employee, beyond that of a servant, beyond that of a housekeeper, services which, altogether, could not be expected of any servant and which could not be compensated for by any going wage."

The sitting Justice also found as a fact that the plaintiff after arriving in Portland on August 15, 1923, entered into an oral agreement or contract with Fenwick T. Leonard, the deceased, "whereby he agreed that if she would come to Portland and look after his home until he died, break up her home in St. John, sell

out everything there, bring her brother and sisters with her he would 'make a will' or 'leave her' at his death the property, a two tenement house at 71 Roberts Street and $10,000 in money. I am convinced beyond any reasonable doubt that such a contract was made at that time, in every essential as stated."

He further states, "I have no doubt that his intentions to so dispose of his property grew out of the arrangements made with Nellie Brickley, were pursuant to the contract which they entered into orally and would have been carried out if his sudden demise had not prevented his full performance of his contract.

"The plaintiff, Nellie, upon the evidence in this case, I am convinced, fully performed her contract with fidelity and more."

The plaintiff, by reason of the excluding rule of evidence, did not testify.

Evidence to sustain an oral promise to make a will must be conclusive, definite, certain, and the contract must be established beyond all reasonable doubt. *McCullough* v. *McCullough*, Infra, at p. 71.

To support a decree to carry out the provisions of an oral contract to convey land the evidence must be "full, clear and convincing." *Wilbur* v. *Toothaker*, 105 Me., 490.

The decision,.as to matters of fact, of a single Justice sitting in a case in equity should not be reversed, unless it clearly appears that such decision is erroneous. The burden to show the error falls upon the appellant. *Young* v. *Witham*, 75 Me., p. 536; *Sposedo* v. *Merriman*, 111 Me., 538; *Gilman* v. *Haviland et al*, 114 Me., 307; *Wilson* v. *Littlefield*, 119 Me., 145; *Hahnel Bros.* v. *Hanson et al*, 119 Me., 307; *Getchell* v. *Getchell et al*, 127 Me., 330.

Not to go further into a recital of the evidentiary facts as disclosed by the testimony of the various witnesses, the court after careful consideration of the case is of the opinion that the evidence disclosed is sufficiently full, clear, convincing, and free from reasonable doubt to fully justify the above findings of fact made by the sitting Justice.

In accordance with those findings, the decree was that the land and buildings on Roberts Street, and the furniture and chattels therein, with the exception of certain articles inherited by the de-

ceased from his father and mother, and in addition thereto the sum of ten thousand dollars ($10,000.00) on deposit in banking institutions and trust companies, in equity belonged to the plaintiff and were charged with a trust in favor of the plaintiff as and from the date of the death of said Fenwick T. Leonard on April 19, 1929, and that the defendant within thirty days from the date of the decree (August 20, 1929) should convey to the plaintiff the said land and buildings; also that he should give the plaintiff full possession of all the aforesaid goods and chattels, and that, individually and as administrator, the defendant should be perpetually enjoined from interfering with the enjoyment and possession thereof by the plaintiff; and also that he should pay to the plaintiff, from the funds received by him as administrator of the deceased's estate, the sum of ten thousand dollars ($10,000.00); and that the plaintiff recover costs of suit.

The case comes to this court on appeal from this decree.

As the law permits a man to dispose of his own property at his pleasure, he may make a valid agreement for its disposition by will to a particular person or for a particular purpose. Such an agreement, where, in reliance upon it, the promisee has changed his condition and relation so that a refusal to complete would be a fraud upon him, and where the courts of law afford no adequate remedy, may be enforced in equity, if not within the statute of frauds, or if oral and by part or full performance removed from its operation, if there is present no inadequacy of consideration and there are no circumstances or conditions rendering the claim inequitable. In such cases the court does not act on the ground that it has the power to compel the actual execution of a will carrying out an agreement to make a bequest, or a devise, as this can be done only in the lifetime of, and by him, who makes such an agreement, and no breach can be assumed as long as he lives. The theory on which the court proceeds is to construe the agreement as binding the property of the testator or intestate so as to fasten or impress a trust on it in favor of the promisee. 25 R. C. L., Sec. 120, p. 306; 25 R. C. L., Sec. 125, p. 311, and cases cited; Pomeroy on Specific Performance of Contracts, Third Ed., Sec. 191 (2), p. 490, note, and cases cited, and cases, Sec. 191 (a); Lawrence on Equity

Jurisprudence, Vol. 2, p. 877, Sec. 787 ; *McCullough* v. *McCullough* (Wash.), 280 Pac., 70 ; *Lawton et ux.* v. *Thurston et al* (R. I.), 128 Atl., 199, citing an earlier case of *Spencer et al* v. *Spencer et al* (R. I.), 55 Atl., 637, and cases cited; *Best* v. *Grolapp et al,* 69 Neb., 811, 96 N. W., 641 ; *Burdine* v. *Burdine, exr., et al,* 98 Va., 515, 36 S. E., 992 ; note 399, Ann Cases, 1914 A ; *Wolf* v. *Donahue et al* (Cal.), 273 Pac., 547 ; *Staples* v. *Hawthorne et al* (Cal.), 277 Pac., 1107 ; to same effect *Crawford et al* v. *Wilson,* 139 Ga., 654, 78 S. E., 30 ; *Berg* v. *Moreau* (Mo.), 97 S. W., 901 ; *Signaigo* v. *Signaigo et al* (Mo.), 205 S. W., 23 ; to same effect *Johnson* v. *Hubbel,* 10 N. J. Eq., 332 ; *In re Brill's Estate* (Wis.), 197 N. W., 802 ; *Dillon et al* v. *Gray et al* (Kan.), 123 Pac., 878 ; *Oles* v. *Wilson et al* (Col.), 141 Pac., 489 ; *Traver* v. *Naylor et al* (Ore.), 268 Pac., 75 ; to same effect *Bolman et al* v. *Overall et al,* 80 Ala., 451, 60 Am. Rep., 107 ; recognizing the same principle, *Dicken* v. *McKinlay et al,* 163 Ill., 318, 45 N. E., 134.

This court in enforcing against a devisee a parol agreement to convey land where there has been sufficient part performance to take the case out of the statute of frauds, has recognized and acted upon this same doctrine of an impressed trust. In the case of *Woodbury* v. *Gardner,* 77 Me., at p. 75, the Court said, "When a contract is made for the sale of an estate, equity considers the vendor as the trustee of the vendee, holding the vendee's legal estate on a naked trust." (Citing *Linscott* v. *Buck,* 33 Me., 530.) And, "The equitable title changes when the contract is completed. The consequences of this doctrine follow. As the vendee's legal estate is held on a naked trust by the vendor, this trust, impressed upon the land, follows it in the hands of his heirs and devisees, and his grantees with notice."

In the case of *McCullough* v. *McCullough,* supra, there was an oral contract to make a will by which the plaintiff was to receive "the Eldridge Avenue home" and the sum of $50,000.00. The decree awarded the plaintiff the real estate and the money. On appeal the decree was affirmed, the Court saying, "an oral contract to make a will, which has been fully performed by the person seeking to enforce it, may be enforced in equity as against the heirs, devisees, or personal representatives of the deceased. The courts of

equity will compel specific performance of such an agreement by requiring those upon whom the legal title has descended to convey or deliver the property in accordance with the terms of the agreement upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser, with notice of an agreement, as the case may be."

We are unable in any way to distinguish the present case from the case above referred to, and we are of the opinion that the doctrine of an impressed trust controls the rights of the parties in the case at bar and that the decree below should be sustained.

The defendant contends that the provisions of Chap. 92, Sec. 14, Revised Statutes of Maine, as amended, apply to the instant case, and that a compliance with them is a condition precedent to the right to maintain this action and that the plaintiff, having failed to comply with those provisions, relative to presentation and filing of her claim, has no standing in this court.

The answer to this contention is that this is not a claim against the estate of Fenwick T. Leonard, but a claim against and for certain property, real and personal, which, impressed with a trust in favor of the plaintiff, does not and can not be said to form any part of the estate of the deceased.

*In re Soden's Estate* (N. J.), 148 Atl., 12, is illuminating on this point. In that case the decedent in his lifetime agreed to leave his entire estate by will to M but instead gave it by will to others. On a bill in equity against the executor, devisees and legatees the final decree, reciting that the complainant had duly established the agreement, decided that the executor be deemed to hold all the personal property, subject to the payment of decedent's debts and to administration expenses, in trust for the complainant, and that he turn over the net estate to the complainant, and that the devisees convey the real estate to the defendant. This decree was carried out and the case came up on a question of whether an inheritance tax could be assessed against M. In holding that such a tax could not be assessed the Court said, "Suits against the subsequent grantees or devisees from a promisor are often called suits for specific performance, but it is obvious that in fact they are not; they are essentially suits to establish and enforce a trust."

In cases such as the one now under consideration it is not necessary to file the statutory notice of a claim required where the demand is against the estate. *Oles* v. *Wilson et al* (Col.), 141 Pac., 489; *McCullough* v. *McCullough* (Wash.), 280 Pac., 70; *Noble* v. *Noble* (Cal.), 243 Pac., 439; *Connecticut Trust and Safe Deposit Co., Admr.* v. *Security Co., Admr.*, 67 Conn., at p. 443; *Bramell et al* v. *Adams et al* (Mo.), 47 S. W., 931, see also *Ohlendiek* v. *Schuler et al*, 299 Fed. at p. 186.

We are, therefore, of the opinion that the requirements of Chap. 92, Sec. 14, supra, have no application to this case.

*Appeal dismissed.*
*Decree below affirmed.*