UNITED STATES *v.* STEVENS, ADMINISTRATRIX, ET AL.

No. 143. Argued January 3, 4, 1938.—Decided January 17, 1938.

*Mr. Paul Campbell,* with whom *Solicitor General Reed, Assistant Attorney General Whitaker,* and *Messrs. Paul A. Sweeney* and *Henry A. Julicher* were on the brief, for the United States.

*Mr. James E. Carroll,* with whom *Messrs. Charles B. Rugg* and *Warren F. Farr* were on the brief, for respondents.

624

MR. JUSTICE BLACK delivered the opinion of the Court.

Can the United States enforce a contract executed by an ex-soldier in order to obtain admission into the National Home for Disabled Volunteer Soldiers, which contract provides that upon the death of the veteran while a member of the Home, all his personal property shall pass to the Home subject to be reclaimed within five years by any legatee or person entitled to receive the property by inheritance?

The district court held the contract valid and enforceable.[1] The Court of Appeals reversed.[2]

The facts disclose that:

Thomas McGovern, a native of Ireland, served in the United States Army from 1877 to 1882; in 1904 his wife and three daughters left him, but a son, Robert, continued to live with McGovern until 1918 when the son (represented in this cause by a guardian) was committed to a state home for the insane; the complete severance of all family ties and associations continued until McGovern's death, and the wife and daughters, living most of the time in Boston, Massachusetts, were wholly unaware of his whereabouts for the last twenty years of his life, most of which were spent in nearby Chelsea; under these circumstances, McGovern, age 72, in his application for admission to the Home, stated that the names and addresses of his wife and nearest relatives were unknown, and that he desired admission because he was "unable on account of his disability to earn his living"; a doctor's certificate showed that his mental condition was good, at the date of admission, but that he needed medical treatment and attention due to serious physical weakness and ailments. His written agreement with the Home stated:

---

[1] 15 F. Supp. 139.
[2] 89 F. (2d) 151.

"The said Thomas McGovern hereby agrees that, in event of his death while a *member of the National Military Home* for Disabled Volunteer Soldiers, leaving no heirs at law or next of kin, all personal property owned by him at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers *for the sole use and benefit of the post fund of said home, and that all personal property of the said Thomas McGovern shall upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member; . . ."* [Italics added.]

At the time of his admission into the Home, McGovern had savings deposits which were his personal property. September 17, 1928, while an inmate of the Home, he died intestate. His wife died in 1933 without knowledge of his death, and none of the daughters learned of his death until October 19, 1935. No claim to McGovern's property was filed with the Home within five years after his death.

In this action brought by the United States to require payment to the Home of funds of McGovern on deposit in a Massachusetts bank at his death, it is contended:

(1) that, because McGovern left surviving heirs, the title to his personal property did not pass to the Home;

(2) that the Act of June 25, 1910 [3] authorizing the Home to make the contract with McGovern is invalid.

---

[3] Act of June 25, 1910, c. 384, 36 Stat. 703, 736, U. S. C., Title 24, § 136:

"Hereafter the application of any person for membership in the National Home for Disabled Volunteer Soldiers and the admission

1. There is no ambiguity in the contract or in the Act which authorized it. No words in the contract indicate that the personal property should pass to the Home only in the absence of persons entitled to take by law. On the contrary, both the contract and the Act evince a clear intent that the personal property of the veteran, when not claimed by heirs or legatees *within five years after the veteran's death,* should pass to the Home to be used to provide comforts and entertainment for its inmates. "The measure [the Act of 1910] leaves the member free to dispose by will and safeguards to the legatees and heirs the right *within five years* to reclaim 'all the property' that belonged to him at the time of his death. As to that, there is no ambiguity and therefore nothing to construe." [Italics added.] *National Home* v. *Wood,* 299 U. S. 211, 216.

2. The Court of Appeals was of the opinion that the Act of Congress authorizing the contract was void as an interference with the reserved rights of the state of the veteran's legal domicile when he died (Massachusetts)

of the applicant thereunder shall be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member of such home, leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, the proceeds to be disposed of and distributed among the several branches as may be ordered by said Board of Managers, and that all personal property of said applicant shall, upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member. The Board of Managers is directed to so change the form of application for membership as to give reasonable notice of this provision to each *applicant and as to contain the consent of the applicant to accept membership upon the conditions herein provided."* [Italics added.]

in that "it was at most but an attempt to make a future testamentary disposition of McGovern's property, when such a disposition could only be effected by will." .

. This contract, however, is valid under the applicable state law.[4] The Supreme Court of Massachusetts in 1931 in the case of *Hale* v. *Wilmarth*, 274 Mass. 186, 189; 174 N. E. 232, said, "The statute of wills, . . . does not prevent an owner of property from stipulating by contract for the disposition of his property at the time of his death."[5]

During the life of the veteran, his property was his own to dispose of as he desired; his was an "intent to make a more binding and irrevocable provision than a legacy could be"[6] and a stipulation for notice to his heirs of the fact of his death was not required to make the provision valid. "Not until the ancestor dies is there any vested right in the heir." *Jefferson* v. *Fink*, 247 U. S. 288, 294.

In passing the Act of June, 1910, Congress merely directed the terms and conditions under which veterans, consistently with state law, can obtain admittance to Homes built, maintained and operated by the government for the benefit of veterans. Homes for the aged, needy, or infirm, in return for the benefits bestowed by them, generally receive some benefit from any property or estates of their members.[7]

[4] "Contracts respecting the disposition of one's property after death, are not uncommon." *Murphy* v. *Murphy*, 217 Mass. 233, 236; 104 N. E. 466.

[5] See, also, *Holyoke National Bank* v. *Bailey*, 273 Mass. 551; 174 N. E. 230; *Ex parte Simons*, 247 U. S. 239.

[6] *Krell* v. *Codman*, 154 Mass. 454; 28 N. E. 578.

[7] See *United States* v. *Bowen*, 100 U. S. 508 (Cf. *Order of St. Benedict* v. *Steinhauser*, 234 U. S. 640). See Digest of Poor Relief Laws of the Several States and Territories as of May 1, 1936, prepared by Robert C. Lowe and Staff, Legal Research Section, under the supervision of A. Ross Eckler, Coördinator of Special Inquiries, Division of Social Research, Works Progress Administration.

When McGovern entered this Home he was aged, without family ties, lonely and physically incapacitated. There he received care, food, shelter and companionship. He would have been privileged to remain in the Home even though, after admittance, he had chosen to make the members of his family the recipients of the money, by gift, by will, or by notifying them to claim his property after his death.

The claim of the Government is based on a contract between the veteran and the Home. Nothing in the record indicates that the agreement was not fairly and voluntarily entered into between the parties, or that it was inequitable, unjust or not upon valuable consideration. Both parties were competent to make the contract. This contract is valid and enforceable, and since no claim was made by heirs or legatees within five years after his death, the veteran's personal property passed to the Home for the benefit of its inmates. The decree of the Court of Appeals is not in harmony with these views and is

*Reversed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.