## UNITED STATES v. ESSEX TRUST CO.

### No. 971.

District Court, D. Massachusetts.

April 16, 1942.

Edmund J. Brandon, U. S. Atty., William J. Koen, Asst. U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., all of Boston, Mass., for the United States.

John C. Coughlin and Parkman, Robbins, Coughlin & Hannan, all of Boston, Mass., for Essex Trust Co.

Parsons & Wadleigh, of Lynn, Mass., for estates of intervenors John Carnes and Charles Carnes.

SWEENEY, District Judge.

This action was commenced by the United States to recover a deposit in the defendant bank standing in the name of John Carnes, a deceased veteran. The administrator of the estate of Charles Carnes, son of the veteran, has intervened, and claims the same deposit. The defendant's answer contains a counterclaim in the nature of an interpleader alleging, in substance, that it has no interest in the fund, and offers to pay whomever the court designates as the proper owner of the deposit, and asks for its costs and attorney's fees.

There are two questions involved: (1) Was the agreement entered into between the deceased veteran and the National Home for Disabled Volunteer Soldiers a valid agreement, and (2) did the death of the son of the veteran within five years after the veteran's death toll the running of the five-year period until an administrator of the son's estate was appointed?

### Findings of Fact.

In 1910, John Carnes deposited $600 in the predecessor of the defendant bank. On October 23, 1917, he made application, and was admitted to the National Home for Disabled Volunteer Soldiers at Togus, Maine. At the time of his entrance into that home he executed an agreement pursuant to the Act of June 25, 1910, Chapter 384, Section 1, 24 U.S.C.A. § 136, in the following language:

"The said John Carnes hereby agrees that in the event of his death while a member of the National Home for Disabled Volunteer Soldiers, leaving no heirs at law or next of kin, all personal property owned by him at the time of his death, including money or

choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said Home, and that all personal property of the said John Carnes shall upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member; and he further stipulates and agrees that he will abide by and obey all the rules and regulations made by the Board of Managers, or by their order; that he will perform all duties required of him, and obey all lawful orders of the officers of the Home."

The veteran died on December 18, 1922, leaving a son, Charles Carnes, surviving him. The son died on May 15, 1927, which was within the five-year period mentioned in the veteran's agreement. The son was survived by a widow who is now living. An administrator of the estate of the son was not appointed until June 4, 1941. No claim was made against the defendant bank until February 10, 1939, when the United States made its demand. Suit was instituted October 16, 1940. The right of the United States to this deposit is based on the Act of July 3, 1930, 38 U.S.C.A. § 11b, whereby the title to all of the assets of the Togus Home "Post Fund" were vested in it.

On November 26, 1940, the attorneys for the widow of the deceased son notified the defendant bank that they were about to take out administration on the veteran's estate. Subsequently, an administrator was appointed both over the estate of the veteran and the estate of the deceased son. On July 15, 1941, the administrator of both estates was allowed to intervene in this suit.

### Discussion.

■ The administrator claims the funds in the hands of the bank in behalf of the estate of the deceased son, relying on the theory that, at the time of his appointment as administrator on June 4, 1941, there were still seven months to run of the five-year period mentioned in the veteran's agreement. In substance, he contends that the death of the son tolled the running of the five-year period until the administrator was appointed. There is nothing to this contention, for the Act of June 25, 1910, set a very definite time limit within which the funds could be reclaimed by a legatee or an heir. That period was specifically a five-year period. As stated in United States v. Stevens, 302 U.S. 623, 626, 58 S.Ct. 388, 389, 82 L.Ed. 484, "both the contract and the act evince a clear intent that the personal property of the veteran, when not claimed by heirs or legatees *within five years after the veteran's death,* should pass to the Home to be used to provide comforts and entertainment for its inmates." The title of the Home could have been defeated within five years after the veteran's death. At the expiration of the five years, with no claims having been advanced, title to the veteran's property became absolute in the United States.

■ The administrator of the deceased son next asserts that a contract attempting to dispose of property after death is invalid under the laws of the State of Maine. Assuming, for the purpose of meeting this contention, that the law of the State of Maine would govern this transaction, I can find no case in the Maine decisions which holds that a contract to dispose of property after death is invalid. The cases cited by the proponent of this argument, such as Appeal of Garland, 126 Me. 184, 136 A. 459, and Reid v. Cromwell, 134 Me. 186, 183 A. 758, have to do with the creation of joint bank accounts, and seem to point out that unless the gift is complete or is based upon adequate consideration it could not be supported as a gift inter vivos. In the Garland case, supra [126 Me. 184, 136 A. 466], the court stated that "the theory of a post mortem transfer by contract is as clearly of the nature of a testamentary disposition as a gift to take effect after death without such contract." In Saco & Biddeford Savings Institution v. Johnston, 133 Me. 445, 180 A. 322, the court held the creation of such a joint bank account was valid because the establishment of the account was based on a good consideration, namely, the rendition of services to the donor by the donee. The effect of these cases seems limited to gifts inter vivos. In Brickley v. Leonard, 129 Me. 94, 149 A. 833, 835, 836, the Maine court stated that: "As the law permits a man to dispose of his own property at his pleasure, he may make a valid agreement for its disposition by will to a particular person or for a particular purpose." See, also, Lang v. Chase, 130 Me. 267, 155 A. 273, and Brackenbury v. Hodgkin, 116 Me. 399, 102 A. 106.

■ But the law of the State of Maine does not control the decision in this case.

This contract was executed on property which the State of Maine had ceded to the United States Government, partly in 1867, and partly in 1905. The State of Maine relinquished all of its jurisdiction over this and similar reservations, except for the purpose of serving process. See the Revised Statutes of Maine, Chapter 2, Section 11. While the law of the State of Maine with regard to personal and property rights would continue to be the law of such reservation insofar as it was not inconsistent with the laws of the United States (see In re Chavez, 8 Cir., 149 F. 73, 75), when Congress in 1910 passed the Act affecting this property it became the supreme law with regard to the relinquished territory. See Chicago, Rock Island & Pacific R. Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270, 271, 272.

■ In United States v. Stevens, supra, the Supreme Court of the United States held that a similar contract executed under the statute was valid, and was not void as being an interference with the reserved rights of the state of the veteran's legal domicile. In this case, as in the Stevens case, the legal domicile of the veteran was the State of Massachusetts. Accordingly, on all grounds whether controlled by the law of the State of Maine, or by the Commonwealth of Massachusetts, or by the Federal common law (see the persuasive reasoning of Mr. Justice Jackson in D'Oench, Duhme & Co., Inc., v. Federal Deposit Insurance Corporation, 62 S.Ct. 676, 86 L.Ed. ——, decided by the Supreme Court of the United States on March 2, 1942, as to the existence of a Federal common law), the contract is valid and enforceable, and since no claim was made by heirs or legatees within five years after the veteran's death, the property passes to the Home for the benefit of its inmates.

### Conclusions of Law.

From the foregoing, I conclude and rule (1) that the contract between the veteran and the National Home for Disabled Volunteer Soldiers at Togus, Maine, was a valid and enforceable contract; (2) that, no claim having been made by the heirs or legatees of the veteran within five years of the veteran's death, the title to the deposit in the hands of the defendant bank is in the United States Government; (3) that, from the deposit in the hands of the defendant bank, the sum of $75.00 may be retained by it as its reasonable costs and attorney's fees.

A decree in accordance with the above rulings may be submitted.

Herbert A. Baker, of Boston, Mass., for plaintiff.

Richard Whiting, of Boston, Mass., for defendant.