UNITED STATES of America, Plaintiff,

v.

Andrew Earl TRANSOU, Defendant.

Crim. A. No. 82–30267.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 14, 1983.

Joe B. Brown, U.S. Atty., William M. Cohen, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

William Farmer, Federal Public Defender, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDERS

NEESE, Senior District Judge.

The defendant moved to suppress evidence obtained by employee(s) of a government hospital in a warrantless search and seizure of his personal effects stored at such institution while the defendant was a voluntary patient therein. Rules 12(b)(3), 41(f), F.R.Crim.P. The Court received evidence on the issues of fact necessary to the decision thereon on January 18, 1983. Rule 41(e), F.R.Crim.P.; Rules 104(a), (c), Federal Rules of Evidence, and the matter has remained since under advisement.

The right of the people to be secure in their " * * * effects * * * against unreasonable searches and seizures, shall not be violated. * * * " Constitution, Fourth Amendment. This amendment " * * * was intended to protect against invasions of 'the sanctity of * * * the privacies of life,' * * * from searches under indiscriminate, general authority. Protection of * * * [such] * * * interest[ ] was assured by prohibiting all 'unreasonable' searches and seizures, and by requiring the use of warrants * * *, thereby interposing a magistrate between the citizen and the [authorities] * * *." Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 301 n. 2, 87 S.Ct. 1642, 1647[6], 18 L.Ed.2d 782 (1967); see also Chimel v. California, 395 U.S. 752, 761, 89 S.Ct. 2034, 2039[2], 23 L.Ed.2d 685 (1969), and Stanford v. Texas, 379 U.S. 476, 481–485, 85 S.Ct. 506, 509–512, 13 L.Ed.2d 431 (1965).

As of this moment, evidence that has been seized illegally cannot be admitted in evidence, Weeks v. United States, 232 U.S. 383, 391–393, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914); Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 1258[7], 2 L.Ed.2d 1514 (1958); Elkins v. United States, 364 U.S. 206, 216–217, 80 S.Ct. 1437, 1443[3, 4], 1444[5], 4 L.Ed.2d 1669 (1960), to deter undesirable conduct by governmental authorities, United States v. Janis, 428 U.S. 433, 456 n. 31, 96 S.Ct. 3021, 3033 n. 31, 49 L.Ed.2d 1046 (1976). " * * * [T]he Fourth Amendment protects people * * *. * * *

What a person * * * seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. * * * " Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511[10], [12], 19 L.Ed.2d 576 (1967) (per Stewart, J.). Its protection depends upon " * * * whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. * * * " Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968); accord: Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430[6], 58 L.Ed.2d 387 (1978) (The question is: was there " * * * a legitimate expectation of privacy in the invaded place?")

In deciding whether the protection against unreasonable searches and seizures has been infringed, each case must be considered on its own facts, Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931), which are exponential, Robbins v. California, 453 U.S. 420, 431, 101 S.Ct. 2841, 2848, 69 L.Ed.2d 744 (1981) (per Powell, J., concurring in the judgment.) " * * * '[S]earches conducted * * * without prior approval by judge or magistrate, are per se unreasonable * * * ___ subject only to a few specifically established and well-delineated exceptions.' * * * " Mincey v. Arizona, 437 U.S. 385, 391, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978), quoting from Katz v. United States, supra, 389 U.S. at 357, 88 S.Ct. at 514. " * * * A lawful search of luggage generally may be performed only pursuant to a warrant. * * * " Arkansas v. Sanders, 442 U.S. 753, 763, 99 S.Ct. 2586, 2592[2], 61 L.Ed.2d 235 (1979). Those of the prosecution seeking the exception to the inspection of the defendant's luggage from the rules hereinabove had " * * * 'the burden * * * to show the need for it.' * * * " Id., 442 U.S. at 759–760, 99 S.Ct. at 2591.

" * * * It is axiomatic that the [Constitution,] Fourth Amendment[,] forbids only those warrantless searches deemed 'unreasonable.' * * * " Chenkin v. Bellevue Hosp. Ctr., N.Y.C., Etc., 479 F.Supp. 207, 213[4] (D.C.N.Y.1979). " * * * [T]here can be no ready test for determining reasonableness other than by balancing the need to

search against the invasion which the search entails. * * * " *Camara v. Municipal Court,* 387 U.S. 523, 536–537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). " * * * [I]t may be that the public safety requires luggage to be searched without a warrant in some circumstances—such as when luggage is about to be placed onto an airplane. * * * " *Arkansas v. Sanders, supra,* 442 U.S. at 765 n. 12, 99 S.Ct. at 2593 n. 12. Therefore, " * * * it is necessary 'first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen' * * *." *Terry v. State of Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

Persons who have served with the Armed Forces of this nation are entitled to a certificate to reflect their induction, period of training and service; certain benefits and privileges which are intended for non-dishonorable dischargees, 38 U.S.C. § 3103, are conferred upon them by federal veterans' laws, 38 U.S.C. §§ 310, 331. Created for the administration of those laws and related purposes is the Veterans' Administration, an independent establishment in the Executive Branch, headed by the Administrator of Veterans' Affairs, 38 U.S.C. §§ 210, et seq.

█ Such Administrator is responsible for extending relief *inter alia* to all veterans, *Hines v. United States,* 105 F.2d 85, 88[3] (D.C.Cir.1939), and that official makes rules and regulations which are appropriate to carry out uniformly and consistently therewith the laws administered by such agency. 38 U.S.C. § 210(c)(1). These regulations have the force of law. *Texas Employers' Ins. Ass'n v. U.S.,* 558 F.2d 766 (5th Cir.1978) *reh.* 569 F.2d 874, 875 (1978), *cert. den.,* 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978).

Through that Administrator's department of medicine and surgery, he functions to provide complete medical and hospital service for the medical care and treatment of veterans entitled thereto, 38 U.S.C. § 4101, including such care and treatment at regional medical education centers in ge-

ographically dispersed areas of the country, 38 U.S.C. § 4121. For purposes here, all honorably-discharged veterans will be admitted to such a hospital facility of the Administration to the extent its facilities permit, 38 U.S.C. § 610(a)(1), and without limitation as to any veteran 65 or more years of age, 38 U.S.C. § 610(a)(4); and he or she may not be deprived by regulation of that right or have its enjoyment conditioned. *United States v. St. Paul Mercury Indemnity Company,* 133 F.Supp. 726, 735[2] (D.C.Neb.1955), *aff'd.,* 238 F.2d 594 (8th Cir.1956).

Such patient-care is required to be provided under such regulations and procedures which assure its carrying out with the full and informed consent of the patient. 38 U.S.C. § 4131; *Matter of W.S., Jr.,* 152 N.J.Super. 298, 377 A.2d 969, 971[2] (1977). That Administrator " * * * may delegate * * *, or authorize successive redelegation of, authority to act * * * with respect to all laws administered by the Veterans' Administration, to such officers and employees as he may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts * * * of such officers and employees * * * have the same force and effect as though performed or rendered by the Administrator," 38 U.S.C. § 212(a); *Beehler v. United States,* 40 F.2d 313, 315[1] (6th Cir.1930).

█ The aforementioned Administrator is required to prescribe such rules and procedures governing the furnishing of hospital (and other) care " * * * as the Administrator may deem proper and necessary * * " as well as "limitations in connection with the furnishing of hospital (and other) care, and * * * such rules and regulations as the Administrator deems necessary in order to promote good conduct on the part of persons who are receiving hospital [and other] care in Veterans' Administration facilities." 38 U.S.C. § 621(1), (2), (3). Therefore, veterans' benefits are gratuities of the national sovereign and establish no vested right in the recipients thereof; the availability of those benefits may be withdrawn by the Congress at any time and under such condi-

tions as the Congress may impose. *de Rodulfa v. United States,* 461 F.2d 1240, 1257–1258[20] (D.C.Cir.1972), *cert. den.* 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972), citing *inter alia Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934).

Nonetheless: " * * * The allowance of hospitalization and treatment is made imperative to the extent of available facilities in behalf of a veteran who, being in need of such hospitalization and treatment, makes an affidavit on a prescribed Veterans' Administration form that he is unable to defray the necessary expenses therefor; and the Veterans' Administration is without authority by regulation to deprive a veteran of that right or to condition its enjoyment. * * * " 77 Am.Jur.2d at 998, Veterans § 70. " * * * The statute [*supra,*] is absolute, unqualified, and mandatory in terms, and no choice is left the administrator other than to admit and treat the veteran. * * " 6 C.J.S. at 917, Armed Services § 257.

Where property and buildings are under the jurisdiction of the Veterans' Administration: " * * * For the purpose of maintaining law and order and of protecting persons and property on [such] lands and in [such] buildings * * *, the Administrator or any officer or employee of the Veterans' Administration duly authorized by him may—

"(1) make all needful rules and regulations for the governing of the property under his charge and control, and annex to such rules and regulations such reasonable penalties within the limits prescribed in subsection (b) of this section as will insure their enforcement. Such rules and regulations shall be posted in a conspicuous place on such property * * *."

38 U.S.C. § 218(a). Subsection (b) thereof renders such rule or regulation thus issued an offense punishable by the violator's being " * * * fined not more than $50 or imprisoned not more than thirty days, or both." 38 U.S.C. § 218(b), *supra.*

*Inter alia,* " * * * the following rules and regulations apply at all property under the charge and control of the Veterans' Administration * * * and to all persons entering in or on such property." 38 C.F.R. § 1.218:

"(c) * * * the creation of any hazard on property to persons or things; * * * the willful destruction * * * [or] * * * damage * * * of Government property or any part thereof, without authorization * * *.

"(d) * * * The head of the facility, or his designee, shall have the authority to post signs of a prohibitory and directory nature. Persons, in and on property, shall comply with such signs of a prohibitory or directory nature * * *.

\* \* \* \* \* \*

"(g) * * * The introduction or possession of alcoholic beverages or any narcotic drug, hallucinogen, marijuana, barbiturate, and amphetamine on property is prohibited, except for liquor or drugs prescribed for use by medical authority for medical purposes. * * *

\* \* \* \* \* \*

"(m) * * * No person while on property shall carry firearms, other deadly or dangerous weapons, or explosives, either openly or concealed, except for official purposes.
\* \* \* "

The prosecution, beyond the peradventure of a reasonable doubt, carried its burden of showing a need for the inspection of the defendant's luggage and other parcels he brought onto the property of the Veterans' Administration Hospital, Murfreesboro, Tennessee, within this District. *Cf. Arkansas v. Sanders, supra,* 442 U.S. at 759–760, 99 S.Ct. at 2591. The public interest in preventing the introduction of prohibited materials into such Hospital was sufficiently strong to make it reasonable for the Administration, lacking both an authorizing warrant or traditional probable cause, to condition access by any person seeking to enter upon submission by that person to an administrative inspection thereof. *United States v. Miles,* 480 F.2d 1217, 1219 (9th Cir.1973).

The more difficult question is whether the intrusion into this defendant's luggage and other parcels was " * * * more intru-

sive than necessary to meet the need * * " with which the Administrator and his delegates were confronted " * * * so they might achieve their legitimate purposes." *Id.* " * * * [I]t is by no means inconsistent with existing Fourth Amendment doctrine to say that these searches should be no more intrusive than is reasonably necessary to accomplish the underlying purpose." 3 LaFave, Search and Seizure, 365, § 10.7.

Our own Circuit Court of Appeals views a similar search unintrusive to a prohibitory degree when:

(1) notice is given that luggage will be subject to inspection if it is brought into the area which has been restricted appropriately, and

(2) the owner of the luggage is afforded the opportunity to avoid the search of his belongings by the simple expedient of removing them from the premises.

*United States v. Freeland,* 562 F.2d 383, 385–386[3] (6th Cir.1977), *cert. den.,* 434 U.S. 957, 98 S.Ct. 484, 54 L.Ed.2d 315 (1977); *accord: United States v. Henry,* 615 F.2d 1223, 1230[6] (9th Cir.1980) ("In determining whether Henry freely and voluntarily consented to the search we believe the crucial factor is whether Henry could have freely withdrawn the briefcase and avoided the search.")

Herein, all the luggage and other parcels brought to the hospital were subject to being opened and subsequent close inspection. Notice was given of their custom and practice at the entrances to the Veterans' Hospital implicated herein, in the following (representative) legend:

NOTICE

All persons entering this building consent to the inspection of all packages, luggages and containers in their possession.

Refusal of consent to inspection is basis for denial of admission.

Director

Notices were posted also to all patients, personnel, and visitors that patients would not be permitted during their period of care to have in their possession: firearms, ammunition or weapons of any type; illicit drugs (narcotic, stimulant, depressant, or hallucinatory); medicine other than prescribed by the attending physician; intoxicating beverages; or any " * * * other article specified by the [d]irector."

In the office of admissions (of patients) of the institution was posted a notice " * * * to advise patients or their responsible representatives, that valuables and funds will be accepted for safekeeping * * * "; that the Administration would assume no responsibility for any loss of any valuable remaining in the possession of patients; and urging all patients, upon admission, " * * * to place all articles which are excess to their needs, particularly luggage and articles of intrinsic value, in the custody of their responsible representative."

Articles of intrinsic value might be left with a person in such office of admissions under the custom and practice at the institution; such items were placed in a "valuables' envelope," receipted-for, and returned to the patient upon discharge. As a further part of such custom and practice, all luggage and other parcels were and are delivered routinely and uniformly to a storageroom of the Hospital; there, without exception, each is opened and inspected by a delegate of the Administrator for soiled clothing and related items and for prohibited items.

Clothing and related items, deemed to require laundering, are laundered; thereafter, they are returned to the place where the particular patient is housed, or, if that patient is housed in a place where hospital-clothing is furnished, such items are returned to and replaced in the piece of luggage or parcel whence it came.[1]

Prohibited items discovered in the search are confiscated and, where an offense is involved, are delivered to the Hospital's chief-of-police for further treatment. Any valuable item located in such luggage and any other parcels are removed and placed in a valuables' envelope in the same manner and with the same procedure as in the office of admissions, *supra.* Stored items,

---

1. A new plastic bag is furnished as a container for any items brought in a plastic bag.

less those confiscated, are returned to the patient upon discharge and receipted-for.

The defendant-veteran, Mr. Transou, who appeared to the Court to be more than 65 years of age, was faced with a choice: he could either have departed the Veterans' Hospital without the care and treatment he needed (or have, or have not, sought such elsewhere) *or* he could be admitted and have his luggage and other parcels subjected to search. His need for assistance had arisen in night-time hours, and he went to the subject Hospital alone in a taxicab with no "responsible representatives * * * *" attending him into whose " * * * custody * * * *" he might have placed " * * * all articles which [were then] excess to [his] needs, particularly luggage * * *."

According to an examining physician herein, he had then " * * * been suffering from [s]chizophrenia, [c]hronic[-][p]aranoid type for many years and * * * was suffering from this at the time of his entrance into the V.A. hospital. * * * " While he continued to live, his property and effects remained his own, even though he availed himself of the relief the Veterans' Administration offered to and provided for him. *United States v. Stevens,* 302 U.S. 623, 627, 58 S.Ct. 388, 390, 82 L.Ed. 484 (1938), cited in *United States v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), *reh. den.* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961).

▮ The Congress committed to this Administrator, as the head of a department, certain duties requiring the exercise of his discretion, and his action, involving either questions of law or fact, will not be reviewed unless he has exceeded his authority or a Court is of the opinion that his action was clearly wrong. *See United States v. Shimer,* 367 U.S. 374, 381–382, 81 S.Ct. 1554, 1560 [6], 6 L.Ed.2d 908 (1961). It must be assumed that Mr. Transou was aware that, if he submitted himself for medical examination and possible treatment at this institution, his belongings would be inspected for health and safety reasons. Whether for reasons of his personal sickness or otherwise, he chose to consent to such inspection and search to gain admission thereto, he surrendered "the sanctity of * * * the privicies of" the firearm included in his luggage among his possessions.

Although there was no showing of probable cause to believe before its discovery that Mr. Transou was violating a regulation by having concealed such firearm in his suitcase when he was admitted to the institution, the prosecution demonstrated at the pretrial hearing herein a need on the part of the Administrator's delegates to "maintain[ ] law and order and * * * to protect[ ] persons and property" in the institution with rules and regulations "for the governing of the property" under the charge and control of the Administrator's authorized delegates. *Cf. United States v. Miles, supra.* Thus: such delegate was within his lawful authority to "condition [the] access" of Mr. Transou to, the medical attention provided him by law upon his submission to an administrative inspection and search of his personal belongings.

As stated, Mr. Transou could have avoided the discovery of his firearm within his luggage by having made a disposition thereof by some means short of entering the institution with it concealed in his suitcase. It is inferable reasonably from the proved facts that Mr. Transou had no way of anticipating the length of time he would remain within the institution, and that he must have known there would be some type of storage implicated in his stay there of undeterminable duration.

Furthermore, there seems to have been no manner of such delegates' determining, without an inspection and, as indicated, a search of such stored articles, whether something being thus stored contained some substance endangering the lives or health of other veterans then therein or to be admitted subsequently to the admission of Mr. Transou. It results that the search of Mr. Transou's luggage under all the circumstances presented was not unreasonable within the meaning of the Constitution, Fourth Amendment, *supra;* he had no "reasonable expectation of freedom from governmental intrusion" when he decided to

enter the hospital area with a firearm[2] and thereafter had no "legitimate expectation of privacy in the invaded place." *See: Mancusi v. DeForte, supra; Rakas v. Illinois, supra.* The aforementioned delegates' need to search outweighed their invasion of Mr. Transou's effects which the search herein entailed. *Camara v. Municipal Court, supra.*

Although the matter is not completely free of all doubt, the motion of the defendant to suppress evidence of the aforementioned firearm lacks merit and hereby is

DENIED.

---

**2.** In addition, it was illegal for Mr. Transou to have been in the possession of a firearm if his discharge from the armed forces had been under conditions less than honorable, 18 U.S.C. § 1202(a); *United States v. Day,* 476 F.2d 562, 568 [7–9] (6th Cir.1973), if such had been proved to have been a fact.